## Wallace, Jr., et al. v. Lackey.

(Decided January 10, 1917.)

## Appeal from Lawrence Circuit Court.

1.  Trespass—Judgment—Objection to Judgment.—In a suit for trespass to real estate, where the title to the land is in issue, when a judicial record or judgment of a court of general jurisdiction, in another suit, is offered by a litigant as a link in his chain of title, the *only objection which can be made to the* record or judgment is, that it is void. It can not be objected to because it is erroneous.
2.  Judgment—Jurisdiction.—If the court which rendered the judgment or made a decree has jurisdiction, it is not void, though it may be erroneous.
3.  Judgment—Jurisdiction.—When a court of general jurisdiction makes an order, which recites that it was done by the consent of the parties, upon a collateral attack, it is conclusively presumed that all of the parties agreed to it or else it would not have been made.
4.  Judgment—Collateral Attack.—A decree or judgment of a court of general jurisdiction, which is not void, can not be assailed, except by a direct proceeding to overturn it.
5.  Judgment—Collateral Attack.—A judgment of a circuit court, in this state, can not be set aside upon a collateral attack, upon the ground that it is void, because the court was without jurisdiction to render it, unless the record of the court in the case shows that it did not have jurisdiction.
6.  Judicial Sales—Purchaser Under.—The purchaser of land at a decretal sale becomes the equitable and beneficial owner when the sale is approved and the purchase money paid, and when a deed is made, it relates back and vests him with such title, as the parties to the suit may have had, when the sale was approved.

CLYDE L. MILLER, R. C. McCLURE and G. W. CASTLE for appellants.

M. S. BURNS and W. D. O'NEAL for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This is an appeal from a judgment of the Lawrence Circuit Court, in an action wherein F. T. D. Wallace, Jr., and others, the appellants, were the plaintiffs, and the appellee, James Q. Lackey, was the defendant. The action was to recover from the appellee the value of certain trees, which appellants alleged that he had wrongfully cut and removed from their lands and converted to his own use, and damages done to their lands by cutting underbrush and making roads over them.

The defense of the appellee consisted of a denial of the ownership of the trees or lands from which the trees were cut, or upon which the underbrush was cut or the roads made, and a claim of ownership by the appellee of the lands by adverse possession for the statutory period necessary to create title in him under the statute of limitations. At the conclusion of all the evidence, the court sustained a motion to instruct the jury peremptorily to find for the appellee. The jury returned a verdict for appellee in accordance with an instruction to that effect, and the court rendered a judgment, by which the petition was dismissed.

The appellants' motion for a new trial being overruled, they have appealed.

While the court below did not assign any reason for peremptorily directing a verdict, an examination of the record demonstrates clearly that it was done upon the ground that the appellants had failed to manifest any title to the lands in controversy, and not because all of the evidence had tended to show title to the lands in the appellee.

The land in controversy is an unenclosed, unimproved tract of woodland, containing ten and one-half acres, and the familiar rule, that the plaintiffs are obliged to recover, if at all, upon the strength of their own title, and not because of want of title in the defendant prevails in this case. The ruling by which the court directed a verdict for appellee was the result of a previous ruling by it, as to the admission of certain evidence for the appellants, which will be hereafter noticed. The facts of the case, as developed by the proof for the appellants, will be adverted to for the purpose of determining whether the court was in error as to its ruling upon the admission of the evidence mentioned.

On November 24th, 1853, John Rogers, Jr., sold and conveyed to Thomas Wallace a large tract of land, of which the tract in controversy was a part. On December 10th, 1857, Wallace sold and conveyed to John Haws a portion of the land upon the southern end of his tract. The northern end of the portion sold and conveyed to Haws adjoins the land in controversy. He, also, sold a portion of the land, which was conveyed to him by Rogers, to Wellman and Wilson. This portion adjoined the land in controversy for a short distance on the east side.

Another portion of the Rogers land, Wallace sold to John Crabtree. The land sold to Crabtree adjoined the land in controversy upon the northeast and north. After these sales were made, there remained to Wallace of the lands purchased from Rogers, the ten and one-half acres of land in controversy. On April 3rd, 1865, John Haws sold and conveyed to Thomas Wallace the lands which Wallace had theretofore sold and conveyed to him, and, also, two other tracts adjoining. Thomas Wallace then moved upon these lands, residing upon one of the tracts until he died, in 1871. The land in controversy adjoined the land purchased by Wallace from Haws upon the northern end. The lands purchased from Haws and the ten and one-half-acre tract in controversy were called the Haws farm to distinguish it from other lands which were owned by Wallace. Shortly after the death of Thomas Wallace, the administrator of his estate instituted a suit against his heirs and creditors for a settlement of the estate. The Haws farm was ordered to be sold in that action, and was purchased by Eugene Wallace and F. T. D. Wallace, Sr. This sale was made on the 13th day of January, 1876, and the sale reported to the court on May 30th, 1876. The report of sale was confirmed during May, 1876, but a deed was not made until the year 1897. Previous to that time Eugene Wallace had died, and F. T. D. Wallace, Sr., who was a joint purchaser of the lands with him, transferred his interest in the purchase to the heirs of Eugene Wallace, who are the appellants here. In 1897 a deed was ordered to be made for the lands to the heirs of Eugene Wallace, and the commissioner of the court executed to them a deed, which was reported and approved, but as is insisted by appellants, the commissioner, by mistake, failed to include in the deed the land in controversy. In 1898 the suit of the administrator of Thomas Wallace against his heirs and creditors was stricken from the docket of the court. After this controversy arose, on May 5th, 1910, an order was entered in the Lawrence Circuit Court, wherein the suit for the settlement of Thomas Wallace's estate had been prosecuted, reinstating the case upon the docket, and the order recites that it was done by consent. Thereafter, the court rendered a judgment, which recites the fact of the sale of the Haws farm, the report and confirmation of the sale, and the

transfer by F. T. D. Wallace, Sr., to the heirs of Eugene Wallace, and the making of the deed in 1897, and that by mistake all of the land sold at the sale was not included in the deed, and directed the court's commissioner to make and report a deed to the heirs of Eugene Wallace, which would include the land in controversy, as well as the other lands embraced in the former deed. F. L. Stewart, the commissioner of the court, in obedience to this order, made and reported a deed, by which the title of all the heirs of Thomas Wallace was conveyed to the appellants in the lands in controversy, as well as in the other lands which had been sold by the commissioner, in 1876, to Eugene Wallace and F. T. D. Wallace, Sr. This deed was acknowledged by the commissioner and was, by an order of the court, duly approved and so endorsed by the judge of the court, and ordered to be certified for record.

In 1875, in a suit by the receiver of the estate of Thomas Wallace against John Crabtree, the lands owned by Crabtree and which lie adjoining the lands in controversy, upon the north, were sold by a judgment of the court, when Greenville Lackey became the purchaser, and same were conveyed to him on the 23rd day of June, 1883. After the death of Greenville Lackey, the appellee, James Lackey, became the owner of a portion of these lands by inheritance from his father, Greenville Lackey. The boundary of these lands shown in the evidence does not seem to cover or embrace the lands in controversy.

Upon the trial, after appellants had exhibited a chain of title to the lands in controversy from the Commonwealth of Kentucky down to Thomas Wallace, and then the deed from the commissioner of the court in the suit for the settlement of Thomas Wallace's estate to appellants, which was made in 1897, they then offered in evidence the deed by the commissioner of the court in the same suit, which was made to them in the year 1910, and the order of the court directing the making of such deed. The introduction of this deed in evidence was objected to and the court sustained the objection, upon the alleged ground that the suit had been redocketed and the deed made without any notice to the appellee, and after the trespasses complained of were committed. While there was no formal avowal of its contents, it shows for itself and the record makes it

clear that it embraces the lands in controversy. After the rejection of this deed as evidence, the court being of the opinion that appellants had failed to show title to the lands sustained the motion for the direct verdict. The order of the court directing the case to be redocketed and the order directing the deed, which was rejected, to be made, and approving same were exhibited upon the motion to read the deed in evidence. In rejecting the deed as evidence, and hence in directing a verdict against appellants, the court was in error. With this deed as evidence, the appellants would have shown a connected chain of title for the lands from the Commonwealth of Kentucky to themselves, and were entitled to recover for the trespasses sued for, if appellee did not show a title from Thomas Wallace, or a vendee of his, anterior to that of appellants, or a title to the lands by adverse possession, or by reason of the alleged agreement to establish a division line. The appellee was not a party to the suit in which the rejected deed was made and had no interest in any proceedings in that case, as any step therein could in no way affect any title, which he may have to the land, and for that reason was not entitled to notice of any proceedings therein. The effect of the deed made in 1910 was to vest in appellants such title to the land in controversy as the heirs of Thomas Wallace may have had at the date of the confirmation of the sale to Eugene Wallace and F. T. D. Wallace, Sr., in May, 1876, and no other effect whatsoever. It does not appear that any other persons had any interest in the proceedings in 1910, except the heirs of Thomas Wallace, and if they chose to agree to place the suit again upon the docket and to have a deed made to conform to the sale theretofore made, and to correct any error in a former deed, the court thereby acquired jurisdiction of the parties and the subject matter. In an action of this character, when a judicial record or judgment is offered in evidence as a part of the chain of title, the only objection which can be made to it is, that it is void. It can not be objected to because it is irregular, or erroneous. If the court which rendered the judgment or made the decree had jurisdiction, the judgment or decree is not void, though it may be erroneous. When a court of general jurisdiction makes an order, which recites that it was done by the consent of the parties, when it is

collaterally attacked, it must be conclusively presumed that all of the parties to the suit agreed to it, or else it would not have been made. Duff v. Hagins, 146 Ky. 792. For the appellee to attack the validity of the order of the circuit court in the action of Thomas Wallace's Administrator v. Thomas Wallace's Heirs and Creditors, reinstating the case upon the docket, in 1910, and the judgment directing the deed of 1910 to be made, is, but a collateral attack upon them, since his purpose and the relief sought by the attack was not to have vacated the order and judgment, but to defeat the title of his adversary. 23 Cyc. 1062. It is well settled that a decree or judgment, which is not void, can not be attacked, except in a direct proceeding to vacate the judgment. McIlroy v. Speed, 4 Bibb 85; Berry v. Foster, 22 R. 745; Sorrel v. Samuels, 20 R. 1498; Duff v. Hagins, 146 Ky. 792. It is likewise well settled, that a judgment of a court of general jurisdiction, as is a circuit court, in this state, can not be collaterally attacked, unless the want of jurisdiction of the court appears upon the record in the action wherein the judgment was rendered. Before a judgment of such a court can be held to be void upon a collateral attack, because of want of jurisdiction of the court to render it, the record must show that the court was without jurisdiction. If the record is merely silent as to some jurisdictional fact, as a want of a summons upon some party to the suit, it will be presumed that the party was duly summoned, or else the judgment would not have been rendered. Bamberger v. Green, 146 Ky. 258; Dennie v. Alves, 132 Ky. 345; Jones, &c. v. Edwards, &c., 78 Ky. 6; Newcomb v. Newcomb, 13 Bush 533; Sears v. Sears, 95 Ky. 173; Wilson v. Teague, 94 Ky. 47; 1 Black on Judgments, Sec. 271; Fleet on Collateral Attack, Sec. 855; Maysville & B. S. R. R. Co. v. Ball, 108 Ky. 241; Segal v. Reisert, 128 Ky. 117; Miller v. Farmers Bank, 25 R. 373; Berry v. Foster, 22 R. 746; Northington v. Reed, 25 R. 354; Feltner, et al. v. Huff, et al., 118 S. W. 936; Derr v. Wilson, 84 Ky. 17; Meyers v. Pedigo, 72 S. W. 734. Hence, the parol proof heard by the court below, in the instant case, as to the validity of the orders of the court relating to the reinstatement of the action upon the docket and the making of the deed of September 10th, 1910, was all incompetent. The reason for the principle, which denies a litigant the

right to collaterally attack a judgment of a domestic court of general jurisdiction for any reason, except that the judgment is void for want of jurisdiction of the court to render it, is not far to seek. If such attacks were 'permissible, in every action in which it became necessary for a litigant to rely upon a decree or judgment of such a court in another action, it would involve in the action on trial all the facts and proceedings which gave the court jurisdiction, wherein the decree or judgment was rendered. The rule which confines the evidence, for the determination as to the jurisdiction of the court which renders a judgment, to the record of the action, is founded upon the reason of the above rule, and the presumption that a court of general jurisdiction has not proceeded without its jurisdiction.

The alleged trespasses complained of in the petition were committed before the corrected deed of 1910 was executed to appellants by the commissioner of the court, and it is contended, that, at that time the appellants were not the owners of the land in controversy, and for that reason the corrected deed should not be admitted in evidence, although it may have invested appellants with title upon the date of its execution. However, if the land in controversy was a portion of the lands which were sold at the decretal sale, on January 13th, 1876, to Eugene Wallace and F. T. D. Wallace, Sr., and the same confirmed in May, 1876, and the purchase money paid, the purchasers became the owners of the land upon the confirmation of the sale and the payment of the purchase price. The confirmation of the sale vested in the purchasers the equitable title to the land, and they thereby became the beneficial owners. The execution of the deed only conveyed to them the legal title. Until its execution, the heirs of Thomas Wallace held the legal title, but it was for the benefit of the purchasers of the land, and when the deed was executed it related back and vested in the appellants the legal title as held by the heirs of Thomas Wallace at the confirmation of the sale. Neal v. Louisville, 6 R. 300; Dennis Bros. v. Strunk, 108 S. W. 975; Feltner v. Huff, 118 S. W. 936.

Hence, the court was in error in excluding the corrected commissioner's deed to appellant for the land and the order directing the deed to be made. While the records of the suit except the order to redocket and the judgment directing the deed to be made were not offered

in evidence, the recitals in the deed with these orders are sufficient, *prima facie,* to support the validity of the decree and the other matters affecting the validity of the conveyance. With the admission of the deed and order, it seems that the evidence was sufficient to require the submission of appellant's cause to the jury, under proper instructions.

The questions raised in the record and in the briefs as to the competency of the evidence offered by the appellee in support of his defense and the sufficiency of such evidence to support a defense to the action are not decided, since the court below was not asked, at the conclusion of the evidence, to, and did not rule thereon, and no instructions were offered or considered relating to the grounds of the defense, and such questions are not now before this court for adjudication.

The judgment, for the reasons given, is reversed and the cause remanded for proceedings consistent with this opinion and other proper proceedings.