## Goosling, et al., By, etc. v. Pinson, Jr., Executor, etc., et al.

(Decided March 2, 1923.)

### Appeal from Pike Circuit Court.

1. **Wills—Intention of Testator Controls as Ascertained from Entire Instrument.**—The fundamental rule for the construction of a will is to ascertain the intention of testator, and apply it in all cases where such intention is not forbidden by some positive rule of law or public policy, and in arriving at that intention all parts of the will should be looked to.

2. **Wills—Words are Given Ordinary Meaning Unless Contrary Intention Appears.**—The words of a will should be given their ordinary and usual meaning, unless it appears from circumstances and conditions, or from the connection with which the language is used, that they were employed, not in their primary signification, but in some secondary sense.

3. **Life Estates—Life Tenant can Operate Mine Opened or Contracted for by Former Owner.**—A life tenant may work a mine opened before the commencement of his estate even to exhaustion and may also operate a mine where the former owner, prior to the commencement of the life estate, had set apart the land for mining purposes by an enforceable contract, even though no mine had been opened under the contract until after the commencement of the life estate.

4. **Wills—Clause Disposing of Royalties Under Mining Leases Made by Executors Does Not Apply to Royalties Under Existing Leases by Testator.**—A clause in the will empowering the executor to execute mineral leases and, if he should do so, directing him to pay from the royalties therefrom to testator's daughter such sums as may be necessary for her comfortable support, and to pay the balance to her children on their arriving at the age of 21 years, clearly refers only to royalties under leases made by the executor, and does not defeat the right of a life tenant to royalties on the lands under leases executed by testator before his death.

5. **Executors and Administrators—General Clause as to Handling of Money by Executor Does Not Apply to Royalties Belonging to Life Tenant.**—A general clause in a will directing the manner in which the executor should handle money received by him, with special reference to money received under mineral leases executed by the executor, does not give the executor a right to royalties under leases executed by testator which otherwise belonged to the life tenant.

P. B. STRATTON for appellants.

AUXIER, HARMON, FRANCIS & HOBSON, WILLIS STATON and J. H. GREENE for appellees.

Opinion of the Court by Judge Thomas—Affirming.

Alex. Varney died testate and a resident of Pike county in the early part of the year 1919. He executed his will on March 20, 1914, and it was probated after his death on May 15, 1919, and disposed of a considerable estate including a large quantity of land located in the county of his residence. He left surviving him his widow, Pricy A. Varney, a married daughter, Nancy Jane Goosling, and her three children, Lucy Ellen Goosling, Wade Goosling and Pricy Goosling, all of whom were made legatees and devisees under his will. Appellee and plaintiff below, George Pinson, Jr., was appointed by the fifth clause of the will executor thereof and he qualified and is now acting as such. As such executor he filed this action in the Pike circuit court against all of the devisees of the testator seeking a construction of the latter's will with reference to the collection and payment of royalties arising from coal leases which the testator executed during his lifetime and, perhaps, after the execution of his will but before his death, upon two of which leases mines were opened and operated before the testator's death and from the third one he collected the minimum royalties before his death and it was kept alive and was enforceable by the lessee at the time of his death. By the second clause of his will he gave to his widow, Pricy A. Varney, all of his personal property 'including money, livestock, notes, accounts and choses in action,'' and in the same clause he devised to his widow all of his real estate situated in the county ''during her natural life, and if she should survive me and after her death to descend as provided in clause 3 hereof.'' By clause three he provided that after the death of his wife, if she should survive him, his daughter, Nancy Jane Goosling, should take his real estate ''for and during her natural life'' and at her death to her children, if any. By the fourth clause of his will he made provision for the disposition of his property in case he should survive his wife, and in the fifth clause he named an executor of his will.

The chief controversy arises over the correct interpretation of clauses six and seven of the will, which are in these words:

''Sixth: I hereby empower and authorize my said executors each or either who may qualify, to lease any or all of the coal and other minerals owned by me with the usual mining privileges at its market value at the time

of said lease, and they are not required to make such lease unless they deem it to the best interest of said estate. They are also authorized and empowered to collect the royalties arising from such lease, and account to my estate the funds arising from such lease, and if such lease is made by said executors, or either of them, then and in that event I direct that my said executors pay to my said daughter, Nancy Jane Goosling, from time to time such sums of money as they or either of them may deem necessary for the comfortable support of my said daughter, Nancy Jane Goosling, and her children; and that the residue thereof, if any arising from said lease, shall be held in trust by my said executors, and paid to the children of my said daughter, Nancy Jane Goosling, as they arrive at the age of twenty-one years.

"Seventh: I hereby authorize my said executors to deposit any money coming to their hands under this will in some bank or trust company, at whatever interest they can realize on said deposits; and my said executors shall not be charged with a greater interest than they receive on said money, and if said executors should be unable to loan said money to a bank or trust company for interest, then they are required to deposit said money in some good, solvent bank, and they will not be charged with interest on same while in bank."

It is the contention of the executor, and which he alleged in the petition, as well as that of the widow of the testator and his daughter, Nancy Jane Goosling, as alleged in their answer, that the widow is entitled to the royalties arising from the three leases executed by the testator in his lifetime and all of which she is entitled to collect and appropriate to her own use without interference on the part of the executor; while the guardian *ad litem* appointed for the children of Mrs. Goosling insists that a proper interpretation of the will, as contained in its two quoted clauses, vests the beneficial interest in the royalties, arising from the three leases mentioned and executed by testator before his death, in Mrs. Goosling and her children, which should be collected and disposed of in the manner therein provided, and that the widow took no interest whatever in them.

The court below sustained the contention of the executor, the widow and the daughter, and construed the will as giving to the widow, Pricy A. Varney, the royalties from the leases executed by the testator with power to collect them during her life but after her death they passed

to the daughter for her life and at her death to her children, and that the executor had the right to execute leases and collect the royalties therefrom and dispose of them as directed in the sixth clause of the will and to handle and manage the proceeds arising therefrom as directed in its seventh clause, and entered a judgment accordingly, from which the guardian *ad litem* for and on behalf of the infants prosecutes this appeal.

It is admitted by all parties that the contention of the guardian *ad litem* is the correct one as to all leases heretofore and which may hereafter be executed by the executor of the will under the authority conferred upon him by its sixth clause; so that, the only question in the case is, who is entitled to the royalties issuing out of the three leases which the testator executed in his lifetime, during the life of the widow? The fundamental, elementary and universally applied rule is to ascertain the intention of the testator and apply it in the construction of his will in all cases where such intention is not forbidden by some positive rule of law or of public policy. In arriving at that intention all parts of the will should be looked to and the words it contains be given their ordinary and usual meaning, unless it should appear from the circumstances and conditions, or connection with which the language is used that the words were employed not in their primary signification but in some other secondary sense, in which case the latter interpretation should be applied. We have so often repeated the rule as just stated that we deem it unnecessary to insert supporting cases.

Following that rule we experience but little, if any, difficulty in arriving at the intention of the testator in this case. The second clause of his will in plain and unambiguous terms makes the widow the sole legatee of all of his personal property, and the devisee of all of his real estate situated in Pike county for and during her natural life. She, therefore, became a life tenant of all the real estate covered by the will and necessarily took and is entitled to all the emoluments belonging to a life tenant of real estate, unless a different purpose of the testator should appear from some other parts of his will. But it is the contention of the guardian *ad litem* that such a contrary purpose does appear in clause seven of the will, which we will subsequently discuss and dispose of.

In the case of Daniels v. Charles, 172 Ky. 238, and numerous others therein referred to, both foreign and domestic, it is held that "The rule is that a tenant for

life, unless precluded by restraining words may work a mine that was opened before the creation of the life estate" and that "When not expressly precluded, a life tenant may work a mine opened before the commencement of his estate, even to exhaustion." It is furthermore held therein, and which is supported by the adjudicated cases, that "Mining by the life tenant will be allowed if the former owner of the fee has impressed upon it the character of mining land, by executing an enforceable lease for that purpose prior to the commencement of the life estate, although no mine had been opened thereunder until after the commencement of the life estate." In other words, that where the owner before the commencement of the life estate had set apart his land for mining purposes and had impressed upon it such uses by an enforceable contract, the same results would follow and attach to his successors in title as if the mine had been opened and actually in operation before his death, and, of course, before the commencement of the life estate, unless he made different provisions by his will. The same doctrine is in effect held in the case of Crane v. West, 191 Ky. 1, 229 S. W. 51. Many cases are cited in those two opinions which are not necessary to repeat here, since they thoroughly establish the doctrine of each of them, and under it the widow, Pricy A. Varney, is entitled to the royalties from the leases executed by her deceased husband in his lifetime, unless he made contrary provisions in his will.

The remaining question, therefore, is to determine whether such contrary provisions were made. It will be observed that the sixth clause of the will empowers and authorizes the executor to execute mineral leases after the testator's death, if he deemed it "to the best interest of said estate," and if *such* leases were made the executor was therein "authorized and empowered to collect the royalties arising from such lease" (or leases). It is further provided in the same clause that in the event any *such* lease or leases should be made by the executor then *he* should collect the royalties and pay to the daughter, Nancy Jane Goosling, such sums as might be necessary for the comfort and support of herself and children, and the residue "if any arising from *said* lease" (or leases) shall be held in trust by the executor and paid to the children of the daughter as they arrive at the age of twenty-one years. The intention expressed in that clause is possibly as plain as language could make it. It expressly refers to no other leases than those which the *executor* is

authorized to make after he qualifies and, of course, by no sort of reasoning can it be made to apply to any leases which the testator executed in his lifetime. The same clause also designates with positive certainty the only royalties which the executor has the right to collect; and because the testator conferred that right upon him as to the leases which he might make after the testator's death furnishes no ground for the contention that the right to collect and apportion the royalties from the leases executed by the testator was also conferred upon him.

Clause seven of the will contains only a direction to the executor as to how he should handle the money which he was authorized under the will to collect until he could be required under the terms of the will to distribute it. It is broad enough in its terms to include all the money which the executor might collect in winding up the estate, and until he paid it to the ones entitled to it under the terms of the will, but it particularly refers to the royalties which the executor was entitled to collect from the leases which he might execute under the provisions of the sixth clause of the will and, as before stated, it had no reference to the royalties which prior clauses of the will devised to the widow for her natural life.

Since the judgment conforms to the views herein expressed, it is affirmed.