## Goosling et al. v. Varney's Trustee et al.

(Decided May 7, 1937.)

WILLIS STATON for appellant Geo. Pinson, Jr., executor.

K. L. VARNEY for appellant Nancy Jane Varney.

J. C. CANTRELL for appellants Lucy Ellen Goosling et al.

HARMAN & HOBSON for appellee Leckies Collieries Co.

J. J. MOORE and STRATTON & STEPHENSON for appellee W. K. Elliott.

O. T. HINTON for appellee Norfolk & W. R. Co.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On March 20, 1914, Alex Varney, a citizen and resident of Pike county, Ky., executed his last will and testament appointing appellant George Pinson, Jr., executor thereof. He died on April 11, 1919, slightly more than five years after executing it. It was thereafter regularly probated in the Pike county court and the appointed executor qualified. The testator was the owner of a considerable quantity of real estate in Pike county, much if not all of which was underlaid with marketable coal. After the execution of the will and, of course, before his death, he gave three coal leases to different lessees, and two of them opened up mining operations before his death; the third one not doing so until after his death.

By the first clause of the testator's will he directed his debts paid by his executor. By the second clause he gave to his wife, Pricy A. Varney, all of his personal property and then said: "And I also give and bequeath unto my beloved wife, Pricy A. Varney all of my real property situated in Pike County, Kentucky, and on the waters of Pond Creek during her natural life, if she

should survive me, and after her death to descend as provided in clause 3 hereof." In that (third) clause he directed: "After the death of my beloved wife, Pricy A. Varney, if she should survive me, I give and devise unto my daughter, Nancy Jane Goosling, for and during her natural life, all of my said real estate, and at her death to her children in fee." By clause No. 4 he directed that if he should survive his wife, then his daughter, Nancy Jane Goosling, should take all of his personal property absolutely and also his real estate for her life "and at her death to her children in fee." By the sixth clause he empowered and authorized his executor to lease any or all of his coal property for mining purposes and empowered and authorized him to collect the royalties arising therefrom, and then said: "And if such lease is made by such executor or either of them, then and in that event I direct that my said executors pay to. my said daughter, Nancy Jane Goosling from time to time such sums of money that they or either may deem necessary for the comfortable support of my said daughter, Nancy Jane Goosling, and her children, and that the residue thereof, if any, arising from said lease shall be held in trust by my said executor and paid to the said children of my said daughter, Nancy Jane Goosling as they arrive at the age of twenty-one years." Other clauses of the will, not herein specifically referred to, have no bearing upon the questions involved.

On January 24, 1921, the appointed and qualified executor filed an equity action in the Pike circuit court against the widow of the testator, his daughter, and the latter's three children—who were infants under fourteen years of age—asking and praying for a construction of the will, and especially asked for directions with reference to these questions, (a) who had the right to collect the royalties arising from the coal leases given by the testator before his death, i. e., whether he or the current life tenant possessed such right; and (b) who was entitled to such fund after it was collected? The case was practiced and prepared for, and was later submitted, and the court adjudged that the widow was entitled to collect the royalties from the three leases referred to during her life, and to appropriate all of them to her individual use; that after her death the daughter was entitled to do likewise; and that after her death the

royalties became the property of the daughter's three infant children. An appeal was duly prosecuted to this court from that judgment and it was affirmed in the case of Goosling et al. v. Pinson, Jr., Executor, et al., decided on March 2, 1923, and reported in 198 Ky. 57, 248 S. W. 248. After that opinion was rendered, he daughter of the testator obtained a divorce from her husband and in which she was given the custody of their three infant children.

Following that the widow, Pricy A. Varney, and the testator's daughter—both of them then being unmarried—signed a fiduciary bond of a kinsman, W. P. T. Varney, who was cashier of the Day & Night Bank of Williamson, W. Va., whereby they obligated themselves to it to make good any defalcations of their principal. He later became involved in his accounts, and his two sureties (the widow and the daughter of the testator) became liable to the bank for a large sum of money— amounting in the aggregate to something in the neighborhood of $140,000. They thereupon filed their voluntary petitions in bankruptcy in the proper federal court in West Virginia, in which they listed as a part of their assets their respective royalty rights acquired under the will of the husband and father, Alex Varney (the testator), and the court directed its appointed trustee to collect the royalties and appropriate them to the payment of the debts of the two bankrupts—chief among which was their surety liability to which we have referred. Thereafter, the lessees paid the royalties due under their respective leases to the trustee in bankruptcy as directed by the bankruptcy court, until this suit was filed in the Pike circuit court by the three infants through their statutory guardian, A. M. Varney, against the executor of Alex Varney's will, the daughter, Nancy Jane Varney (she having been restored to her maiden name upon obtaining her divorce), and the respective lessees under the three leases the testator made before his death, seeking to recover for the infants against the lessee defendants the entire royalties accruing since the death of the testator.

In their petition they alleged that a proper construction of the will of Alex Varney gave to them such royalties, subject to amounts necessary for the comfortable support of testator's widow and his daughter, and that they had received no part of the royalties although

demanded of the lessees, but which they refused to pay. The petition utterly ignored the prior proceedings to which we have referred; but defensive pleadings not only manifested that fact but relied on the judgment therein rendered as a bar to plaintiff's right to recover in this action. The executor interpleaded and appears to have taken a position directly contrary to the determination we made in the prior case; whilst the trustee in bankruptcy, and the lessees, not only relied upon the former judgment in bar of plaintiffs' right to recover, but also contended in their defensive pleadings that the interpretation given the will of Alex Varney in our 198 Ky. opinion, supra, was and is the correct one.

Among the avoidances (contained in replies and other pleadings) of the res adjudicata effect of the former judgment, the infants by their guardian pleaded that the judgment, in so far as they were concerned, was and is void because they were not summoned therein, and that the affidavit for the appointment of a guardian ad litem made in that case by the executor, who was the plaintiff therein, was defective in that it failed to aver that the infant defendants therein (plaintiffs herein) had no guardian, curator, or committee, and that the later appointment of a guardian ad litem in that case was unauthorized and void because of such omitted facts from the plaintiffs' affidavit. Those avoidances as so contained in plaintiffs' reply were denied. The daughter in this case also sought to avoid the effect of the former judgment by contending that a proper interpretation of her father's will gave her only a comfortable support of the royalties arising from the leases he made before his death, and that any surplus thereof vested in her children, which, of course, was and is directly contrary to our holding in the 198 Ky. case. She also contended in her pleadings that she and her deceased mother were fraudulently inveigled into subscribing the bond of their kinsman, W. P. T. Varney, as cashier of the Day & Night Bank of Williamson, W. Va., and for which reason she should not be held liable thereon. Of course, it requires no lengthy discussion to demonstrate that neither of such defenses made by her possess any character of merit, since there is no pretense but that she was duly summoned in the former case, the judgment in which is relied on as the res adjudicata bar herein; and the proper time and place for the presentation of her other defense (fraudulent procurement

to sign her relative's bond) was and is in the bankrupt court that adjudged the royalties from the three leases to constitute a part of her estate during her natural life, in accordance with the interpretation of Alex Varney's will that we made in the first action, supra.

So that, the only questions presented by this record are: (1) Whether the judgment in the former proceedings, and which we affirmed in the 198 Ky. case, was void for either of the two grounds relied on for invalidating it as to the infants; and if so, then (2) did we err in construing the will of Alex Varney in that opinion— for if we did not, then the same interpretation should be given it on this hearing, and the fact that the former judgment may for any reason be void so as to destroy its estoppel effect would be of no consequence in this case. They will be disposed of in the order named.

1. It is correctly conceded that the attack made on the former judgment (affirmed in the 198 Ky. case) is a collateral one. It will be remembered that it is attacked herein on two grounds: (x) Because of an improper or defective affidavit for the appointment of a guardian ad litem in the former case which rendered void as to plaintiffs any judgment therein made, and (y) failure to summons the infant defendants therein who are the plaintiffs herein. Section 38 of the Civil Code of Practice in subsection 1 prescribes that: "No appointment of a guardian ad litem shall be made until the defendant is summoned, or until a person is summoned for him, as is authorized by secion 52; nor until an affidavit of the plaintiff, or of his attorney, be filed in court, or with the clerk, or presented to the judge during vacation, showing that the defendant has no guardian, curator, nor committee, residing in this State, known to the affiant."

In the two cases of McMakin v. Stratton, 82 Ky. 226, 6 Ky. Law Rep. 154, 224, and Gardner v. Letcher, 28 S. W. 868, 16 Ky. Law Rep. 778, we held that a guardian ad litem might be legally appointed without an affidavit, as directed in the excerpt supra from section 38 of the Civil Code of Practice, within the sound discretion of the court. But in each of those cases there were in existence statutory guardians for the infant defendants therein. The absence of the required affidavit was urged in those cases as a ground for reversing

the judgments, which was a direct attack, because of the contention that the appointment of the guardian ad litem made by the trial court was without the requisite affidavit. However, in neither case was it held that the error, although presented in a direct attack, was a material one authorizing a reversal of the judgment. In the later case of Downing v. Thompson's Ex'r, 92 S. W. 290, 292, 28 Ky. Law Rep. 1182, a similar direct attack by appeal was made because of the same error committed by the trial court, but we refused to reverse the judgment therein for such alleged error, notwithstanding the attack was a direct one. In doing so we stated that the requirement was for the purpose of protecting the interests of the infant so that the court might order a statutory guardian to appear in the cause and defend for his ward; but we expressly held that: "The filing of the affidavit is not a mandatory requirement or a jurisdictional fact, it is merely directory; and, while it is better practice to file the affidavit in all cases where the appointment of a guardian ad litem is asked, the failure to file it will not be cause for reversal, unless it appears that the interest of the infant has been prejudiced."

That ruling was adhered to in the still later case of Tichenor v. Rock, 140 Ky. 86, 130 S. W. 989, and also in the case of Bond v. Dean, 223 Ky. 713, 4 S. W. (2d) 721. If, therefore, such alleged error has no jurisdictional effect—even to authorize a reversal on a direct appeal—it cannot be said to vitiate the judgment on a collateral attack so as to render it void. We, therefore, conclude that this ground of attack on the former judgment is without merit, even if it should not also be disallowed because of the presumption in favor of judgments collaterally attacked—a question to be hereinafter discussed. Ground (x) is, therefore, disallowed.

The second ground (y), i. e., that the plaintiffs herein were not summoned in the former case (they being defendants therein), would undoubtedly render the attack judgment void if the fact alleged in support thereof was true, i. e., that the defendants were not in fact summoned in the case. In the recent case of Dean v. Brown, 261 Ky. 593, 88 S. W. (2d) 298, 300, there was presented for consideration the question involved in this ground. In discussing and disposing of it we said: "While lack of jurisdiction, when established by the

prevailing rules of practice for that purpose, subjects the judgment rendered to collateral attack, the universal rule of practice requires that the absence of jurisdiction of the court rendering the attacked judgment must affirmatively appear of record in that proceeding. It may not be established by evidence dehors the record. Differently stated, the rule is that every presumption will be indulged in favor of a judgment that is collaterally attacked, and that the alleged invalidating fact or facts are provable only by the record itself, and they must affirmatively appear therein. Steel v. Stearns Coal & Lumber Co., 148 Ky. 429, 146 S. W. 721; Baker v. Baker, Eccles & Co., 162 Ky. 683, 173 S. W. 109, L. R. A. 1917C, 171; Caudle v. Luttrell, 183 Ky. 551, 209 S. W. 497; Potter v. Webb, 186 Ky. 25, 216 S. W. 66; Leonard v. Williams, 205 Ky. 218, 265 S. W. 618; Wolverton v. Baynham, 226 Ky. 214, 10 S. W. (2d) 837; Pennington v. Commonwealth, 231 Ky. 494, 21 S. W. (2d) 808; and many others both preceding and following them that might be cited.''

That excerpt was and is in conformity with the universal rule applicable in cases of collateral attacks on judgments, and which is thus stated in 15 R. C. L. 875, sec. 353: ''It is an invincible presumption of the law that a judicial tribunal, acting within its jurisdiction, has acted impartially and honestly, and the integrity and value of the judicial system, as an institution for the administration of public and private justice, rest largely upon this principle. Akin to this principle is the important one that a presumption lies in favor of regularity of the proceedings of any court of general jurisdiction. When such a court acts within its jurisdiction, every presumption is in favor of its judgment, and every reasonable doubt will be resolved in favor of a trial upon the merits. This includes the presumption that such courts act rightly and in conformity to law, and the principle even goes to the extent of presuming that counsel for litigants do their duty. In other words where the degree is such a one as the court had jurisdiction to render, the presumptions are all in favor of its regularity and validity until vacated by some proper proceeding instituted directly for the purpose of correcting errors therein.''

Following sections elaborate and illustrate the statements contained in the excerpt—all of which dem-

onstrate that the burden is on the one who collaterally attacks a judgment to sustain his grounds of attack by the character of competent testimony for the purpose, and that there will be a presumption in favor of the validity of the judgment which the one making the attack must overcome by clear and convincing proof. In the Dean Case, supra, it was pointed out that the invalidating fact should " 'affirmatively appear' from the record of the action in which the attack judgment was rendered," and which was but a statement of the universal rule. However, we therein called attention to the point as to what effect the *silence* of the record in which the attacked judgment was rendered, would have in creating such "affirmative appearance" that the court did not have jurisdiction or did not comply with a mandatory rule of practice, jurisdictional in its nature. However, we did not determine that question for reasons pointed out in the opinion.

In Freeman on Judgments, vol. 1, sec. 382, it is pointed out that a presumption in favor of jurisdiction will not prevail in a collateral attack when the record of the case in which the attacked judgment was rendered *affirmatively* shows want of jurisdiction, since the record in such case would itself prove lack of jurisdiction; but in section 386 of the same valuable work it is stated that the presumption in favor of jurisdiction, when such an attack is made, will prevail and "be predicated upon a *silent* record, or to be more exact, must concern jurisdictional and other facts concerning which there are no positive recitals or findings in the record." (Our emphasis.) In other words, the learned author states the rule to be that a record which is *silent* with reference to the alleged invalidating fact does not make it affirmatively appear that the court did *not* have jurisdiction, or that the omitted fact or action about which the record is silent, did not happen. Therefore, one who alleges its entire absence as a ground for attacking the judgment collaterally must overcome that presumption before he may succeed with his attack.

Upon the same point the text in 34 C. J. 537, sec. 841, says: "In case of a collateral attack upon a domestic judgment of a court of general jurisdiction by a party thereto every reasonable presumption is indulged to support the judgment, and the burden is upon a party

collaterally attacking a judgment to establish its invalidity.. It will be presumed in such a case that the court had jurisdiction both of the subject matter and of the person, and that all the facts necessary to give the court jurisdiction to render the particular judgment were duly found, except where the contrary *affirmatively appears*. These presumptions are indulged where the record, *although failing to show jurisdiction affirmatively,* yet does *not* distinctly show a want of jurisdiction, as where the record of a judgment of a court of general jurisdiction is *silent* as to the facts conferring jurisdiction.'' (Our emphasis.)

Domestic cases cited in the notes to that text in support of it are: Morgan v. Big Woods Lumber Co., 198 Ky. 88, 249 S. W. 329; Baker v. Baker, Eccles & Co., 162 Ky. 683, 173 S. W. 109, L. R. A. 1917C, 171; Potter v. Webb, 186 Ky. 25, 216 S. W. 66; Wallace v. Lackey, 173 Ky. 140, 190 S. W. 709, and a number of others in note 78.

Rule 15 of this court, as printed in its docket, requires the litigant or his attorney who desires to rely upon a former record in this court, relating to the instant appeal, should file or cause to be filed such former record with the pending one. No one in this case attempted to comply with that rule by causing the former record to be filed with the instant one, but we converted ourselves into practitioners on the appeal and obtained the old record, and from it we learn, from the clerk's notation on the petition, that summons was issued upon its filing; that later a guardian ad litem for the infants was appointed, and in the order making the appointment it is recited that it was done from the showing made by the record. However, we fail to find a summons in that record, and there is consequently an absence of a return made by the sheriff. It is, therefore, a case where the record is only *silent* upon such requisite jurisdictional fact. However, under the indulged presumption to which we have referred, the mere silence of the record upon the vital fact does not affirmatively show that no summons was issued, or properly served on the infant defendants, for it will be presumed, until the contrary is shown, that the court did not render judgment until such necessary jurisdiction of the infant

defendants was acquired. In other words, it will be presumed, until the contrary is properly shown, that a summons not only issued for such infants, but that it was properly served. If, therefore, the infants in the former 198 Ky. case (plaintiff herein), and others relying upon this ground of attack, introduced no evidence (as was the fact) to overcome the presumption, the consequence was and is that the attack must fail for want of proof to overcome the presumption in favor of the regularity of the former judgment. No proof of any character was offered, except perhaps the old record, but which we have found to be insufficient to overcome the presumption in favor of that judgment. It is, therefore, clear that the former judgment furnishes a complete bar to the maintenance of this action, and for this reason alone the court properly rendered the judgment appealed from.

2. But if it were otherwise, then the judgment appealed from should be affirmed if it correctly interpreted the will of Alex Varney. We think it did, and our reasons therefor will be found in our opinion on the former appeal reported in 198 Ky., supra. We do not deem it necessary to elaborate upon the conclusions therein reached, and will not attempt to do so, but refer the reader to that opinion for that information. Counsel for appellants have filed a 75-page printed brief in this court—the most of which is taken up with a discussion of questions we deem entirely foreign to the case. For instance, a number of pages are devoted to the doctrine of stare decisis and there is no such question presented. In addition thereto, counsel alleged in some of the pleadings of his client that the will of Pricy A. Varney was executed pursuant to an agreement with her husband before his death that each of them would make reciprocal wills, and that in some way, not grasped by us, a trust was created in their joint estates for certain purposes which counsel gleaned from the contents of the two wills—Pricy A. Varney having died in 1928, and she executed her will about one year after her husband made his. Much discussion is therefore indulged in by counsel in support of such conclusions. No proof of any such arrangement was attempted to be made, nor is any support therefor found in either of the wills of husband or wife. Neither is the estate of the latter in

any wise involved in this case, and neither will refers to the other.

The determinations heretofore made completely dispose of all questions involved on this appeal and no such collateral matters will be referred to or discussed. Wherefore, for the reasons stated, the judgment is affirmed.