CHOCTAW & CHICKASAW NATIONS
v.
CITY OF ATOKA, OKLAHOMA.
No. 4657.

United States Court of Appeals,
Tenth Circuit.
Oct. 28, 1953.

W. F. Semple, Tulsa, Okl. (Lynn Adams, Oklahoma City, Okl., on the brief), for appellants.

Roy Paul, Durant, Okl., and I. O. Correll, Atoka, Okl. (Paul & McPheron, Durant, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

The Choctaw and Chickasaw Nations[1] brought this action against the City of Atoka, Oklahoma,[2] to quiet the title to a 450.96-acre tract of land situated near the City in Atoka County, Oklahoma, and to recover damages for the alleged wrongful withholding of possession of the land.

On September 27, 1830, the United States and the Choctaw Nation entered into a treaty[3] by which the United States agreed to convey to the Choctaw Nation "a tract of country west of the Mississippi River, in fee simple to them and their descendants, to inure to them while they shall exist as a nation and live on it, * * *." Agreeable to such treaty, on March 23, 1842, the United States granted to the Choctaw Nation by patent a tract of land which embraced the land involved in this action. On June 22, 1855, the Nations entered into a treaty[4] by the terms of which the Chickasaw Nation acquired an interest in the land theretofore granted to the Choctaw Nation.

The City brought an action in the United States District Court for the Central Judicial District of Indian Territory at Atoka, numbered 1789 on the docket of such court, seeking condemnation of the land involved herein. Thereafter, in 1907, a judgment was entered in case No. 1789. The judgment recited that no appearance had been entered "for any of the claimants of the land sought to be condemned, although notified of this proceeding as required by law, * * *." The judgment further recited that a jury was empaneled and that it returned a verdict, which found "that the land sought to be condemned, is necessary and essential for the" City "to construct, maintain and operate a water works system," and "that said land is valued at Six Dollars per acre and of a total value of Two Thousand Seven Hundred Five Dollars and Seventy-Six Cents ($2,705.76)."

The judgment adjudged and decreed "that the lands and grounds sought to be appropriated and condemned by the"

---

1. Hereinafter referred to collectively as the Nations.

2. Hereinafter called the City.

3. See 7 Stat. 333.

4. See 11 Stat. 611.

City "shall be, and the same is hereby condemned to the use of" the City, and that the City "is ordered to deposit with the Clerk of this court, the sum of Two Thousand Seven Hundred and Five Dollars and Seventy-Six Cents ($2,705.76) of which amount the Choctaw Nation * * * shall receive Two Thousand Twenty Nine and 32/100 Dollars, which shall be in full of all right, title and interest of said Nation * * * in and to said lands and grounds and the Chickasaw Nation * * * shall receive Six Hundred Seventy Five and 44/100 Dollars which shall be in full of all right, title and interest of said Nations * * in and to said lands and grounds."

The courthouse at Atoka, Oklahoma, was burned after Oklahoma was admitted as a state and many of the records in the office of the court clerk were destroyed, or partially destroyed, by fire. The process papers in case No. 1789 were destroyed by the fire and the remaining records of the condemnation proceedings do not show whether or not the United States was a party to the action.

The City constructed two lakes on the land, one of the area of about 31 acres and the other of the area of about 5 acres. For a number of years such lakes were the sole source of water supply for the City. The water flowed by gravity from the lakes to the distributing system of the City. At the time of the trial, water was flowing from such lakes by gravity into a lake above a low-water dam which the City had constructed on the Muddy Boggy River at a point about a mile and a half from the land involved herein, where the City maintains a purifying and distribution system.

The lakes on the land involved herein are not now used as the sole water supply for the City, but are maintained on a stand-by or supplemental basis. Since the construction of the low-water dam, the water from the lakes on the land involved herein is used when the Muddy Boggy River is so low that the level of the water is below the pumps. Muddy Boggy River was low at the time of the trial and it was necessary to use the water from the lakes to supply adequate water for the City. The City has also used the land for the sale of fishing privileges, as an airport, and as a hay meadow. It also issued an oil and gas lease on the land from which it received a bonus and rental payments. Income received by the City for the years 1937 to 1952 aggregated $7,784.84. In 1952, the City permitted a women's club to construct a bathhouse on one of the lakes, with facilities for both men and women.

The City has not abandoned the lands for the purposes for which they were condemned.

The court found the facts substantially as above stated and held that the Nations had failed to establish by proof that the territorial court was without jurisdiction in case No. 1789, and that the judgment therein must be regarded as valid; that the City was authorized to acquire by condemnation a full fee simple title in whatever tribal lands it needed for waterworks and watershed purposes, and that by the judgment in case No. 1789 the City acquired the full fee simple title to the lands herein involved; and that the Nations are barred by the defenses of laches, limitations and estoppel. From a judgment in favor of the City, the Nations have appealed.

We shall assume, without deciding, that the United States was an indispensable party to the condemnation proceedings. The record did not show that the United States was not a party and the judgment recited that all of the claimants to the land sought to be condemned had been notified of the proceedings as required by law.

■■ The instant action was a collateral attack upon the judgment in the condemnation proceedings. The court had general jurisdiction of the subject matter of the action. 25 Stat. 783, 784, §§ 5, 6; 26 Stat. 81, 93, § 29. Against a collateral attack on a judgment rendered by a court of competent jurisdiction, it will be presumed that court had jurisdiction of the subject matter and

of the parties,[5] and that all facts necessary to give the court jurisdiction or power to render the judgment existed and were duly proven and found,[6] unless the fact of want of jurisdiction and the consequent invalidity of the judgment affirmatively appears on the face of the judgment or of the record, or is otherwise properly established by proof.

Those presumptions will be indulged where the record, although failing to show jurisdiction affirmatively, does not distinctly show a want of jurisdiction.[7]

■ The fact that the process or other papers are missing from the files will not overcome the presumption of jurisdiction.[8]

■ In the absence of any showing in the record either one way or the other, a presumption arises in favor of the validity of the judgment and the existence of all matters going to the power of the court to render the judgment.[9]

■ On a collateral attack on a judgment of a court of general jurisdiction it will be presumed, unless the contrary affirmatively appears, that all parties to the action were properly served with process.[10]

■ The burden is on the party collaterally attacking a judgment to overcome the presumptions above referred to and establish the invalidity of the judgment[11] by competent and convincing proof.[12]

■ There being no affirmative showing by the record or otherwise that the territorial court did not have jurisdiction to render the judgment in case No. 1789, the existence of the essential jurisdictional facts must be presumed and the judgment regarded as valid.

Section 11 of the Act of June 28, 1898, commonly called the Curtis Act, 30 Stat. 495, 498, provides:

"That all towns and cities heretofore incorporated or incorporated under the provisions of this Act are hereby authorized to secure, by condemnation or otherwise, all the lands actually necessary for public improvements, regardless of tribal lines; and when the same can not be secured otherwise than by condemnation, then the same may be acquired as provided in sections nine hundred and seven and nine hundred and twelve, inclusive, of Mansfield's Digest of the Statutes of Arkansas."

Section 907 of Mansfield's Digest of the Statutes of Arkansas provides:

"When it shall be deemed necessary by any municipal corporation to enter upon or take private property for the construction of wharves, levees, parks, squares, market places or other lawful purpose, an application in writing shall be made to the circuit court of the proper county or to the judge thereof in vacation, describing as correctly as may be the property to be taken, the object proposed, and the name or names of the owner or owners, and of each lot or parcels thereof known; notice of the

5. Cook v. Cook, 342 U.S. 126, 128, 72 S. Ct. 157, 96 L.Ed. 146; McCampbell v. Warrich Corp., 7 Cir., 109 F.2d 115, 118; West v. Capital Trust & Savings Bank, 113 Mont. 130, 124 P.2d 572, 575.

6. Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 137 F.2d 871, 879; Kirk v. Sumner County Bank & Trust Co., 25 Tenn.App. 150, 153 S.W. 2d 139, 142.

7. West v. Capital Trust & Savings Bank, 113 Mont. 130, 124 P.2d 572, 575; Goosling v. Varney's Trustee, 268 Ky. 394, 105 S.W.2d 178, 182.

8. Williams v. Tooke, Tex.Civ.App., 116 S.W.2d 1114, 1121; Davis v. Tuggle's Adm'r, 297 Ky. 376, 178 S.W.2d 979, 981.

9. Williams v. Tooke, Tex.Civ.App., 116 S. W.2d 1114, 1121.

10. Westphal v. Westphal, 20 Cal.2d 393, 126 P.2d 105, 107; 49 C.J.S., Judgments, § 425, pp. 838, 839.

11. Davis v. Tuggle's Adm'r, 297 Ky. 376, 178 S.W.2d 979, 981; John Hancock Mut. Life Ins. Co. v. Vandevanter, 141 Kan. 767, 44 P.2d 251, 254.

12. Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 137 F.2d 871, 883.

time and place of such application shall be given, either personally in the ordinary manner of serving process or by publishing a copy of the application, with a statement of the time and place at which it is to be made, for three weeks next preceding the time of application, in some newspaper of general circulation in the county. If it shall appear to the court or judge that such notice has been served ten days before the time of application, or has been published as provided, and that such notice is reasonably specific and certain, then the court or judge may set a time for the inquiry into and assessment of compensation by a jury before said court or judge."

Section 908 of Mansfield's Digest provides for the assessment by a jury of compensation for the land taken.

Section 910 of Mansfield's Digest provides that as soon as the amount of compensation shall have been ascertained by the jury, the court shall make such order as to its payment or deposit as shall be deemed right and proper.

It will be observed that § 11 of the Curtis Act provides for the condemnation of *lands* actually necessary for public improvements; that the judgment used the term "land" and fixed the value of the land and adjudged that the lands sought to be appropriated and condemned were condemned to the use of the City, and that the payment of compensation should be in full of "all right, title and interest" of the Nations "in and to said lands * * *."

 Authority to condemn a fee need not be given in express terms or by exact or technical language.[13] The statute authorizing condemnation will be construed in the light of its general scope and tenor and the nature of the public use for which the condemnation is authorized.[14]

"Land" is a word of broad signification. It has an indefinite extent upwards as well as downwards and includes everything terrestrial under or over it.[15]

 Ordinarily, a statute authorizing the condemnation of land will be construed to authorize the taking of the fee.[16]

 Where lands are condemned by a municipality for waterworks purposes, especially for storage lakes, it is necessary that the municipality be able to protect the watershed and ownership of the fee is essential for that purpose.

 We conclude that the statute authorized the condemnation of the fee and that the fee was condemned by the judgment in case No. 1789.

Affirmed.

HUXMAN, Circuit Judge (concurring).

I concur in Chief Judge Phillips' opinion but am of the further view that the judgment must be affirmed on the further ground that there has been no abandonment of the property for the purpose for which it was condemned by the city. It is still being used. It is still being devoted to the uses for which it was condemned. It is still used to supplement the city's water supply. The fact that isolated portions of the tract, not covered with standing water, are devoted to other incidental uses does not constitute abandonment.

13. Driscoll v. City of New Haven, 75 Conn. 92, 52 A. 618, 620; Carroll v. City of Newark, 108 N.J.L. 323, 158 A. 458, 460, 461, 79 A.L.R. 509.

14. Driscoll v. City of New Haven, 75 Conn. 92, 52 A. 618, 620.

15. Higgins Oil & Fuel Co. v. Snow, 5 Cir., 113 F. 433, 438.

16. United States v. Meyer, 7 Cir., 113 F. 2d 387, 391; Harn v. State, 184 Okl. 306, 87 P.2d 127, 131; Meaney v. Nueces County Nav. Dist. No. 1, Tex.Civ.App., 222 S.W.2d 402, 407, 408.