## ALBERT HANSON LUMBER COMPANY, LTD., v. UNITED STATES.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH
CIRCUIT.

No. 300.  Argued February 28, March 1, 1923.—Decided April 9,
1923.

1. Authority from Congress to condemn a particular canal for use as
   part of a specified waterway, includes by implication so much land
   on either side as is essential to that purpose.  P. 584.
2. The Secretary of War, having been authorized to purchase the
   Hanson Canal for use as part of the intracoastal waterway project
   (Act of July 25, 1912, c. 253, 37 Stat. 212), could acquire it by con-
   demnation, under the general authority given government officers
   by the Act of August 1, 1888, c. 728, 25 Stat. 357, so to proceed
   when authorized to procure real estate for the erection of a public
   building or for other public uses.  P. 585.
3. The Act of April 24, 1888, c. 194, 25 Stat. 94, authorizing the Sec-
   retary of War to acquire by condemnation land, etc., needed to
   enable him to maintain, operate or prosecute works for the improve-
   ment of rivers and harbors, does not operate to exclude the field
   to which it relates from the purview of the Act of August 1, 1888,
   *supra.  Id.*
4. The fact that an act authorizing purchase of specific property
   limits the price to be paid, does not preclude resort to condemna-
   tion under a general statutory authority to proceed in that way,
   subject to the owner's constitutional right to have just compensation
   judicially ascertained and paid before his title passes and to retain
   his right to possession until reasonable, certain and adequate provi-
   sion has been made for obtaining just compensation.  P. 586.
5. In a proceeding by the United States to condemn a canal with land
   on each side,—*Held:*
   (*a*) That resolutions of the board of directors of the corporate
   owner, reciting the necessity for the taking and an agreement with

the United States for a sale at a specified price and authorizing a conveyance, with certain reservations, upon payment of that sum, were not privileged, as an attempt to compromise, but admissions, admissible as evidence of the Government's right to take, decided by the court, and of the value of the property, decided by the jury. P. 588.

(b) That instructions that the jury should consider the original cost of the canal, the cost of reproducing it, and the reasons of the owner for contracting to sell it at a certain price, but might find a greater or less amount,—were unobjectionable. P. 589.

(c) That evidence of the original cost, of a much larger reproduction cost, and of the size, suitability for use, and condition of the canal, sustained a verdict for the amount of the original cost. *Id.*

277 Fed. 894, affirmed.

ERROR to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court in a condemnation case.

*Mr. E. Howard McCaleb,* with whom *Mr. Emmet Alpha* was on the briefs, for plaintiff in error.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* and *Mr. Robert P. Reeder,* Special Assistant to the Attorney General, were on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The United States instituted condemnation proceedings in the District Court for the Eastern District of Louisiana to acquire the so-called Hanson Canal and a strip of land three hundred feet wide including the canal. Plaintiff in error was the owner and objected to the taking on grounds hereinafter stated. Judgment was given condemning the property and vesting title in the United States when the amount found in favor of the owner shall have been paid. The case was taken by the owner to the Circuit Court of

Appeals, and there the judgment was affirmed. The case is here on writ of error to that court.

The owner contends that the District Court and Circuit Court of Appeals erred in holding that the acts of Congress relied upon by the Government confer authority to condemn the canal proper and the land adjacent to and outside the limits thereof within a strip of a total width of three hundred feet inclusive of the canal.

The property is sought to be taken to constitute a part of the intracoastal canal projected by the Government extending from Boston to the Rio Grande. A number of acts of Congress[1] must be considered. Prior to the Act

---

[1]Act approved March 2, 1907, c. 2509, 34 Stat. 1089, makes appropriation for: " Improving Inland Waterway Channel from Franklin to Mermentau, Louisiana, . . ."

Act approved March 3, 1909, c. 264, 35 Stat. 815, 816, provides: " That appropriations or authorizations for appropriations heretofore made may . . . be diverted or applied upon modified projects for the rivers and harbors hereinafter named, as follows: . . .

" Inland waterway between Franklin and Mermentau, Louisiana: To secure a suitable right of way for the proposed inland waterway channel from Franklin to Mermentau, adopted by Congress in the river and harbor Act of March second, nineteen hundred and seven, the location of the eastern terminus of said channel may be changed from the town of Franklin, on Bayou Teche, to such other point on said bayou as the Secretary of War may select: *Provided*, That the modification herein authorized shall not be made unless a valid title to the necessary right of way be secured to the United States free of cost."

Act approved February 27, 1911, c. 166, 36 Stat. 942, 943, makes appropriation for: " Inland waterway between Franklin and Mermentau, Louisiana: To insure the selection of the most suitable route for the inland waterway channel from Franklin to Mermentau adopted by Congress in the river and harbor act of March second, nineteen hundred and seven, the Secretary of War is hereby authorized, on the recommendation of the Chief of Engineers, to make such changes in the location of said channel as may be considered desirable: *Provided*, That no change shall be made under this authorization unless the necessary right of way is secured to the United States free of cost."

approved July 25, 1912, it was contemplated that the
right of way necessary for the enterprise would be secured
to the United States free of cost.   That act authorized
the Secretary of War to purchase the Hanson Canal for
use as a part of the waterway from Franklin to Mer-
mentau, Louisiana, included in the intracoastal project,
at a cost not to exceed $65,000.   September 29, 1913, the
board of directors of the owning company adopted resolu-
tions which referred to the pertinent provisions of the
Acts of Congress respectively approved March 2, 1907,
and July 25, 1912, and recited that " it is necessary for
the United States to have and own a right of way three
hundred feet in width in order to improve and enlarge
said canal and make the same a part of the said Inland
Waterway;" that the United States has proposed and
agreed to purchase the canal, including a three hundred
feet wide strip of right of way and certain locks and other
constructions thereon, and authorized and empowered the
vice president who was the chief executive officer of the
corporation, upon the payment of $65,000 as compensa-
tion, to convey the property to the United States.

These resolutions and the other circumstances disclosed
by the record make it sufficiently clear that the land on
either side of the canal is essential to the enterprise.   It

Act approved July 25, 1912, c. 253, 37 Stat. 201–212.

Act approved April 24, 1888, c. 194, 25 Stat. 94—an act to facili-
tate the prosecution of works projected for the improvement of rivers
and harbors—provides: " That the Secretary of War may cause pro-
ceedings to be instituted, in the name of the United States, in any
court having jurisdiction of such proceedings, for the acquirement by
condemnation of any land, right of way, or material needed to enable
him to maintain, operate or prosecute works for the improvement of
rivers and harbors for which provision has been made by law; such
proceedings to be prosecuted in accordance with the laws relating to
suits for the condemnation of property of the States wherein the
proceedings may be instituted:   .   .   ."

Act approved August 1, 1888, c. 728, 25 Stat. 357.

follows that if the condemnation of the canal proper is authorized, the land may also be taken.

For authority to condemn, the United States relies on the Acts of July 25, 1912, and August 1, 1888. The pertinent provisions are:

" Improving waterway from Franklin to Mermentau, Louisiana: The Secretary of War is hereby authorized to purchase, for use as a part of said waterway, the so-called Hanson Canal  .  .  .  at a cost not to exceed $65,000, .  .  ."  (c. 253, 37 Stat. 212.)

" That in every case in which the Secretary of the Treasury or any other officer of the Government has been, or hereafter shall be, authorized to procure real estate for the erection of a public building or for other public uses he shall be, and hereby is, authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the Government to do so, .  .  ." and jurisdiction is conferred upon the District Courts of proceedings for such condemnation, and the practice, pleadings, forms and proceedings are made to conform as near as may be to those existing in like cases in the courts of the State within which such District Courts are held (c. 728, 25 Stat. 357.)

Plaintiff in error argues that the Act of April 24, 1888, cited in the margin, conferring power upon the Secretary of War to condemn land, right of way and material needed to enable him to carry on work in connection with improvement of rivers and harbors, is exclusive and evidences an intention that the Act of August 1, 1888, shall not apply in that field, and that the Acts of 1907, 1909, 1911, and 1912, engraft an exception on the Act of April 24, 1888, to the effect that, as to the Hanson Canal property here sought to be taken, no power to condemn exists, and that it must be acquired, if at all, by contract of purchase at a price not in excess of the sum specified. It is

true that the authority granted by the Act of August 1, 1888, to some extent overlaps that granted by the earlier statute, (April 24, 1888) but there is no conflict between them. The earlier does not operate to limit the effect of the later act. The Act of 1912 specifically authorizes the purchase of the property because deemed necessary for public use. It would have been futile to authorize the purchase of an essential part of a great project, withholding power to condemn, and so leave it within the power of the owner to defeat the program by demanding a price in excess of $65,000 or by refusing to sell at all. The argument is without force.

Another contention of plaintiff in error is that the provision of the Act of July 25, 1912, limiting the authorized purchase price to $65,000, negatives and necessarily excludes authority to condemn. This is not a case where attempt is made by legislation to fix or limit the just compensation to be paid for private property condemned. It is not like *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, where Congress sought to exclude the value of the owner's franchise right to exact tolls for service performed, thereby violating the Fifth Amendment. The provision authorizing the Secretary to purchase at a cost not to exceed a specified amount has nothing to do with the judicial ascertainment of just compensation for the property condemned. *Shoemaker* v. *United States,* 147 U. S. 282, 302. Neither the right of the owner to be put in as good position pecuniarily as he would have been if his property had not been taken,[2] nor the right to have ascertainment and payment of just compensation as a condition of the taking,[3] is attempted to be impaired by

[2] *Seaboard Air Line Ry. Co.* v. *United States, ante,* 299, and cases there cited.

[3] *United States* v. *Jones,* 109 U. S. 513, 518; *Searl* v. *School District, Lake County,* 133 U. S. 553, 562; *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, 337; *United States* v. *Sargent,* 162 Fed. 81, 83.

legislation here under consideration.   It is not necessary that the exact amount required shall be appropriated or that legislation shall indicate no limit upon the expenditure for property to be taken.   There is no declaration or evidence of legislative purpose to violate the just compensation clause or to secure the property in question for less than the full amount to which the owner was entitled.[4] The power of eminent domain is not dependent upon any specific grant; it is an attribute of sovereignty, limited and conditioned by the just compensation clause of the Fifth Amendment.   The owner is protected by the rule that title does not pass until compensation has been ascertained and paid, nor a right to the possession until reasonable, certain and adequate provision is made for obtaining just compensation.   *Cherokee Nation* v. *Southern Kansas Ry. Co.*, 135 U. S. 641, 659; *Bauman* v. *Ross*, 167 U. S. 548, 598, 599; *Backus* v. *Fort Street Union Depot Co.*, 169 U. S. 557, 568, 569; *United States* v. *Jones*, 109 U. S. 513, 518; *Boom Co.* v. *Patterson*, 98 U. S. 403, 406.[5] The authority to condemn is not negatived or affected by the limit set upon cost in the authorization of the Secretary to purchase.

The Acts of July 25, 1912, and of August 1, 1888, make it obvious that the Secretary of War was authorized to acquire the property by purchase or condemnation.   The authority to condemn conferred by the last mentioned act extends to every case in which an officer of the Government is authorized to procure real estate for public uses.   See *United States* v. *Beaty*, 198 Fed. 284 (reviewed in 203 Fed. 620, but not overruled on this point, and writ of error dismissed in 232 U. S. 463); *United States* v. *Graham & Irvine*, 250 Fed. 499.[6]

---

[4] *In re Manderson*, 51 Fed. 501.

[5] Cf. *In re Military Training Camp*, 260 Fed. 986, 990; Act of July 2, 1917, c. 35, 40 Stat. 241.

[6] For legislative history of the act, see 19 Cong. Rec. part 2, p. 1387; part 7, pp. 6401, 6505.

Plaintiff in error contends that the court erred in receiving in evidence the resolutions of the directors, in giving to the jury the instructions following:

"Coming to consider the value. You have heard what it cost to dig, what it would cost to dig it now, this contract that they made to sell it, and the reasons that induced them to make the contract. All that evidence you will consider. . . .

"Now you are not bound by the $65,000 that they agreed to; if you think they ought to get more than that, why you can award them more than that. If you think they ought to get less than that, you can award them less."

and also in holding that the verdict is supported by the evidence.

There were two principal issues of fact: (1) the necessity of taking the strip of land three hundred feet wide, inclusive of the canal, and (2) the amount of compensation to which the owner was entitled.

The resolutions hereinbefore mentioned stated that it is necessary for the United States to have and own a right of way three hundred feet in width in order to improve and enlarge said canal and make the same a part of the said inland waterway, that the United States had agreed to purchase the property from the company for $65,000, and authorized the conveyance of the same to the United States upon payment of that sum, possession to be retained until the purchase price was actually paid, and the right to cut trees thereon for a specified time, and right of ingress and egress from lateral canals to be reserved.

Two grounds of objection are urged: (1) that the issue of necessity was cognizable in equity and that the court, sitting as a chancellor, should have determined the equity issue prior to the trial of the law issue, and (2) that the resolutions offered in evidence constitute, and tend

merely to prove, an attempt to compromise. The resolutions contained a distinct admission of fact that it was necessary to take the strip of land in question. This admission was made for the purpose of showing the right of the Secretary of War to purchase the property. They were admissible in evidence for that purpose. The judge rightly decided at the trial that the taking was for a public purpose and the Government had a right to take.

The only question submitted to the jury was the amount the owner was entitled to receive for the property. At the time of the adoption of the resolutions, condemnation proceedings had not been commenced; they were voluntarily adopted; the specified price was fixed with perfect freedom; they show a completed agreement of purchase and sale; and there is no reason why they should not be considered as the owner's admission of the then value of the property. The company had opportunity to and did introduce evidence in explanation of the circumstances attending the adoption and the fixing of the price therein. The court did not err in receiving the evidence on the question of fact submitted to the jury. *Seaboard Air Line Ry.* v. *Chamblin,* 108 Va. 42; *O'Malley* v. *Commonwealth,* 182 Mass. 196; *Montana Tonopah Mining Co.* v. *Dunlap,* 196 Fed. 612, 617; *Spring Valley Waterworks* v. *San Francisco,* 192 Fed. 137, 164; *City of Springfield* v. *Schmook,* 68 Mo. 394; *Froysell* v. *Lewelyn* (Eng.), 9 Price, 122; 147 Reprint, 41.

The court instructed the jury to consider what it did cost and what it would cost now to dig the canal, the reasons that induced the company to make the contract, and that in reaching a verdict they were not bound by the $65,000 agreed upon and might find an amount greater or less than that. The objections urged against the charge are not well founded.

The evidence tended to show that the original cost of the canal was $65,000, and that it would cost $152.000 to

reproduce it. There was evidence disclosing the size of the canal, and its suitability for use, together with the condition of the property. It cannot be said the verdict for $65,000 is without support. *Erie R. R. Co.* v. *Winter*, 143 U. S. 60, 75.

> *The judgment of the Circuit Court of Appeals is affirmed.*