**UNITED STATES of America, Plaintiff,**

v.

**HUNTING RIGHTS OF the SWAN LAKE HUNTING CLUB, etc., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**681.45 ACRES OF LAND, MORE OR LESS, etc., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**CERTAIN PARCELS OF LAND IN WASHINGTON COUNTY, MISSISSIPPI, and Hunting Rights of the Swan Lake Hunting Club therein, etc., Defendants.**

**Nos. GC 32-62, GC6322, GC643.**

United States District Court
N. D. Mississippi,
Greenville Division.

Dec. 30, 1964.

H. M. Ray, U. S. Atty., Oxford, Miss., for the United States.

G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, Miss., for State of Mississippi.

James Robertshaw, Greenville, Miss., for defendants.

CLAYTON, District Judge.

These three condemnation actions, consolidated for present purposes, were filed by the United States. Insofar as we are concerned now, they are for the acquisition of hunting rights owned by the Swan Lake Hunting Club, a corporation. These rights exist on land which is to be used for a migratory bird refuge with a portion of all the lands in the refuge to be used as a public hunting area.

The Club, now joined by the State of Mississippi, answered in each case, denying the right of plaintiff to acquire this property by eminent domain and counterclaimed for damages for what would become a temporary taking if their position is correct.

The Club (and the State) moved for summary judgment, contending that plaintiff could not acquire this property by condemnation under any circumstances and that it could not acquire the property in any other way, except with the consent of the State, which it is claimed has not been given, and if given, the consent is without authority under state law. Plaintiff also moved for summary judgment that it has the right to make these acquisitions; that the condemnation proceedings are lawful and that the

defenses and counterclaims are without merit.

These motions are before the court on certain evidential materials and briefs.

These cases all were initiated by a declaration of taking and judgments thereon. Statutory authority for these acquisitions must be found in the Migratory Bird Conservation Act of 1929 (45 Stat. 1222) as amended (16 U.S.C. § 715 et seq.). The authority invoked by plaintiff for these condemnation proceedings is the Act of August 1, 1888 (25 Stat. 357; 40 U.S.C. § 257) and the Act of February 26, 1931 (46 Stat. 1421; 40 U.S.C. § 258a).

The Migratory Bird Conservation Act, in its original form authorized acquisitions such as these only "for use as inviolate sanctuaries" (16 U.S.C. § 715d). It further provided that no such acquisition could be made "unless the State in which the area lies shall have consented by law" thereto (16 U.S.C. § 715f). The naked language of this statute allows plaintiff to "purchase or rent such areas as have been approved for purchase or rental . . . at the price or prices fixed . . . and to acquire by gift or devise . . . and to pay . . . expenses incident to . . . acquisition of title thereto." Specific language authorizing acquisition by condemnation (eminent domain) is not in this law. But, 16 U.S.C. § 715e authorizes the Secretary of Interior to do "all things and make all expenditures necessary to secure the safe title" to lands such as these.

The original Act became law in 1929. In 1930, Mississippi expressed its "consent by law" to such acquisitions. This law has not been amended. It now appears as section 5928, Mississippi Code 1942 (Recompiled) and reads:

> Consent by the State of Mississippi is hereby given to the acquisition by the United States by *purchase, lease* or *gift* of such land in Mississippi as *in the opinion* of the Federal Government and the *Governor of the State* may be needed for the establishment of national migratory bird *refuges* in this region . . .. (Emphasis added.)

The Act was amended, after passage of the Mississippi statute, to allow not to exceed 40% of the "inviolate sanctuary" lands to be administered as a wildlife management area within which migratory game birds and resident species may be taken by hunters under specified conditions (16 U.S.C. § 718d (b)).

Before these actions began, the Governor of the State of Mississippi, at the request of plaintiff, and on the recommendation of the State Game and Fish Commission, signed a letter on October 18, 1960, to plaintiff with respect to this project in which, inter alia, it was stated:

> I am pleased to advise that under the provisions of section 5928 of the Mississippi Code of 1942 (Recompiled), this consent is given in accordance with your proposal and management plans submitted to the State Game and Fish Commission and for the area proposed for purchase at this time and shown on the attached signed map.

This letter also made it clear that plaintiff's proposals contemplated establishment of public hunting rights as authorized by 16 U.S.C. § 718d (b).

Although numerous questions are raised by these moving defendants, there are really only a few primary issues and a few subsidiary questions with which this court must deal to dispose of their motions. The first of these is, since the Act relied on by plaintiff does not explicitly authorize acquisition by eminent domain (condemnation), while many other Federal laws do,[1] and since the "consent by law" state statute aforementioned, limits the consent to acquisition by "purchase, lease or gift," is plaintiff "authorized to procure real estate . . . for public purposes" by us-

---

1. For example: 16 U.S.C. §§ 832a, 833a (c), 831a, 81e, 47e, 231b, 242, 244, 403i, 425a, 427, 426d, 430k, 430u, 447b, 450ll, 459a, and 527

ing the procedure for acquisition established by 40 U.S.C. §§ 257 and 258a?

This court is of the opinion that the answer must be yes.

In Black's Law Dictionary (Fourth Edition), "purchase" is thus defined:

> Transmission of property from one person to another by voluntary act and agreement founded on a valuable consideration. (Citing authorities.) In a technical and broader meaning relative to land generally means the acquisition of real estate *by any means whatever* except by descent. (Citing authorities.) (Emphasis added.)

In 73 C.J.S., page 1255, this word is defined as follows:

> The word "purchase" has two significations, a popular but restricted one, and a legal but enlarged one.
>
> In its legal and enlarged sense, the word "purchase" is defined . . . as meaning all lawful acquisitions of real estate by any means whatever, except by descent.

■ Certainly in its legal and enlarged sense, which is appropriate here, the word "purchase" includes condemnation or eminent domain. The result of an eminent domain acquisition is that the former owner has sold (albeit involuntarily) and the condemnor has purchased the property thus acquired. Persuasive of this view are the cases of United States v. Graham and Irvine, et al., 250 F. 499, 501 (W.D.Va.1917); Hanson Lumber Co. v. United States, 261 U.S. 581, 587, 43 S.Ct. 442, 67 L.Ed. 809 (1923); Barnidge v. United States, 101 F.2d 295, 297 (8th Cir. 1939); United States v. Threlkeld, 72 F.2d 464, 466 (10th Cir. 1934), cert. den. 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708; and United States v. Forty Acres, More or Less, of Land, etc., 24 F.Supp. 390, 392 (D.Idaho 1938). Further, it seems abundantly clear that plaintiff is "authorized to procure real estate for . . . public uses" as contemplated by 40 U.S.C. § 257. Congress, by enacting the Migratory Bird Conservation Act and amendments there-

to declared the purposes for which these acquisitions are being made to be public uses and certainly these lands are authorized to be procured within the meaning of this statute.

These defendants also contend that since P.L. 87–383 (16 U.S.C. § 715k–5) requires that "no land shall be acquired with moneys from the . . . fund unless the acquisition thereof has been approved by the Governor of the State or appropriate State agency" that no such approval has been given here and that these acquisitions cannot be made. This is closely related to their argument that the Governor had no authority to consent or approve except as provided by the aforementioned state law (section 5928, Mississippi Code 1942 (Recompiled)) and that it contemplated consent to acquisition of land for a refuge (not a public hunting area); acquisition by purchase, lease or gift (not by condemnation); and only where the Federal Government *and* the Governor share the opinion with respect to its need for this purpose.

The question of acquisition by eminent domain being within the meaning of "purchase" under Federal law has been dealt with. If this court's view is correct, then the Legislature of the State and all its officials were and are charged with notice of that meaning with respect to the passage of Mississippi's "consent by law" statute aforementioned. In law, at the time of enactment of this law and at the time the aforementioned letter of the Governor "purchase" had this meaning. Hence, the Mississippi statute gave authority for the acquisition of lands for the establishment of *refuges,* when in the opinion of plaintiff and the Governor such lands were needed for such purposes.

■ These defendants contend that the Governor had no such opinion, especially with respect to the public hunting aspects aforementioned and that the State has consented to such acquisitions for *refuge* purposes only—not for *public hunting areas.* By his answers to interrogatories propounded after these actions

**294**

were filed, the Governor now strongly supports these defendants' views. However, when he signed the aforementioned letter on October 18, 1962, he then gave his consent and approval in unequivocal language and within the meaning of the law—Mississippi and federal—expressed his opinion that these lands were needed for the proposed purposes. Having then so acted, he could not later, after acquisitions began, rescind or change his actions.

■ But, say these defendants, the consent of the State is for "refuge" only and not for public hunting areas. This position is untenable for two reasons. First, refuge and public hunting area are not incompatible: both may (and often do) exist on the same lands, side by side or overlapping. Second, only the approval of the Governor is required to authorize acquisition of the land with "moneys from the fund" (16 U.S.C. § 715k–5) and the Governor did approve these acquisitions.

■ Another facet of the position of these defendants is that, as they contend, these acquisitions are not needed under plaintiff's refuge program and that public hunting is not a proper public use. As to public hunting, Congress has by its aforementioned statute foreclosed defendants—it is a congressionally declared public use. Moreover, whether the lands are needed is not a proper matter for judicial determination. The Secretary of the Interior, under federal law, determined that these acquisitions were necessary for the project, the State consented, and the Governor of Mississippi consented and approved. Thus these questions are not properly subject to judicial review. For examples of a few of the many cases which sustain these views, see: Berman v. Parker, 348 U.S. 26, 32, 75 S.Ct. 98, 99 L.Ed. 27 (1954); Rindge Co. et al v. County of Los Angeles, 262 U.S. 700, 708, 43 S.Ct. 600, 67 L.Ed. 1186 (1923); Shoemaker v. United States, 147 U.S. 282, 298, 13 S.Ct. 361, 37 L.Ed. 170 (1892); United States v. Kansas City, Kan. et al., 159 F.2d 125, 129 (10th Cir.

1946); United States v. State of Montana, 134 F.2d 194, 196 (9th Cir. 1943), cert. den. 319 U.S. 772, 63 S.Ct. 1438, 87 L.Ed. 1720; United States v. Meyer, 113 F.2d 387, 392 (8th Cir. 1940), cert. den. 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459; Barnidge v. United States, supra; In Re Condemnations for Improvement of Rouge River, 266 F. 105, 114 (E.D. Mich.1920) and Sweet v. Rechel, 159 U.S. 380, 395, 16 S.Ct. 43, 40 L.Ed. 188 (1895).

From what has been said, it follows that the defendants' motions are not well taken, but those of plaintiff are. Defendants' motions will be overruled, while plaintiff's will be sustained, reserving only for later determination the amount of just compensation to be paid to the Swan Lake Hunting Club for these acquisitions of their hunting rights.

Orders will be entered in accordance with this opinion.