UNITED STATES of America, Plaintiff,

v.

CITY OF McALESTER, OKLAHOMA, a/k/a City of South McAlester, Oklahoma, et al., Defendants.

No. 75–50–C.

United States District Court, E. D. Oklahoma.

Feb. 17, 1976.

Richard A. Pyle, U.S. Atty., Betty R. Outhier, Asst. U.S. Atty., U.S. Dist. Court, Eastern Dist., Okl., Muskogee, Okl., for plaintiff.

Donald R. Hackler, Municipal Atty., McAlester, Okl., for defendants.

## ORDER

COOK, District Judge.

This is an action instituted by the United States of America at the request of the Secretary of the Interior in its own right and in its fiduciary capacity on behalf of the Choctaw-Chickasaw Nations against the City of McAlester, Oklahoma, a/k/a City of South McAlester, Oklahoma, (hereafter referred to as "City"); and Charley Chiusana; J. T. Hall a/k/a Joe Turner Hall; Jim Burrows; Earnest Berry; Phillip Orlandees; Joe Whitefield; Don Ketcham; Bill Lyons; and unknown lessees, licensees and permittees. Plaintiff seeks to quiet title in lands described in the Complaint owned by the Choctaw-Chickasaw Nations. The City claims an easement in the subject land for the purpose of a watershed and basin and for the proposed erecting, maintaining and using of a waterworks system for the City. The City claims a right to the easement so long as the easement used is for the purposes set out by virtue of a condemnation proceeding had in the United States Court in the Indian Territory, Central District, being Cause Number 3293.

The plaintiff more specifically seeks;

1. A judicial declaration that the easement obtained by the City over tribal lands on January 31, 1903, is invalid,

2. To quiet title in lands described in the Complaint,

3. An injunction to prevent the City from issuing permits, leases, licenses and otherwise using said tribal lands without authority, and

4. Money damages for the defendants' alleged unauthorized use of the land.

Jurisdiction of this Court is invoked by virtue of Title 28, United States Code, § 1345, which provides that district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, except as otherwise provided by Act of Congress.

The rights of the Choctaw and Chickasaw Nations in and to the lands in question derive from the provisions of the Treaty of Dancing Rabbit Creek, 7 Stat. 333, and a subsequent treaty dated June 22, 1855, 11 Stat. 611. By the terms of these treaties the Choctaw Nation acquired a tract of country west of the Mississippi River in fee simple to them and their descendants to enure to them while they exist as a Nation and live on it. The Chickasaw Nation acquired an interest in the land theretofore granted to the Choctaw Nation. Fee ownership of the subject land is held by the Choctaw and Chickasaw Nations subject to the trust responsibility of the United States of America.

Prior to January 21, 1903, the City of South McAlester of Indian Territory instituted an action in the United States Court in Indian Territory, Central District. The defendant City of McAlester is one and the same as, and also known as, the City of South McAlester. The action instituted by City, being Cause No. 3293, came on for hearing on the 21st day of January, 1903, which proceeding is evidenced by Government's Exhibit No. 1, styled "Condemnation Proceedings". No other documents, filings or record of proceeding in that case can now be located in the official court files. Government's Exhibit No. 1 recites that plaintiff, City of McAlester, appeared by its attorney; and the defendants, Choctaw and Chickasaw Nations of Tribes of Indians, appeared by their attorneys and thereupon a stipulation theretofore entered into between said parties was presented and ordered filed. The stipulation for judgment is set out verbatim in the "Condemnation Proceedings" and concludes by stating that it was "executed in triplicate on this 21st day of January, 1903." The stipulation for judgment was executed by Wm. Costigan, Attorney for City of South McAlester, and Mansfield, McMurray and Cornish, Attorneys for Choctaw and Chickasaw Nations.

Judgment was entered pursuant to the stipulation and verdict of jury determining and assessing just compensation. The judgment provided that City have and recover of and from the Choctaw and Chickasaw Nations or Tribes of Indians an easement in and to certain properties described therein and provided that City shall enter upon, take hold and acquire the lands so described for the purpose of a watershed and basin and erecting, maintaining and using a waterworks system for said plaintiff, the City of South McAlester, to have and to hold and possess said easement so long as the same shall be used for the purposes set out. The judgment further ordered and decreed that the said Choctaw and Chickasaw Nations or Tribes of Indians have and recover of and from plaintiff therein in full satisfaction of said easement the sum of $6,515.00, and further directed the distribution of said moneys to the Treasurer of each of said nations in amounts as allocated therein. The judgment was signed by Wm. H. H. Clayton, U. S. Judge.

The City of McAlester, pursuant to said judgment and condemnation proceeding, has possessed said lands from the approximate date of said judgment under its easement rights for the purpose of a watershed and basin and for the purpose of erecting, maintaining and using a waterworks system for the City of McAlester.

The parties have agreed that the City of McAlester has made the following uses of the real property which it has possessed and which was the subject of the 1903 condemnation action:

1. Leasing to individuals including J. T. Hall, a/k/a Joe Turner Hall, Earnest Berry, Phillip Orlandees, Don Ketcham, and Joe Whitefield, for the purpose of growing, cultivating, gathering, baling, and related efforts designed toward obtaining and selling hay;

2. Permitted and encouraged Jim Burrows and Charley Chiusana to occupy residences upon the McAlester watershed, which residences were placed there by the City of McAlester;

3. Leasing parcels of subject real estate to utility companies for the purpose of building antennas;

4. Issuing hunting, fishing and grazing permits upon and over the subject real property;

5. Erecting archery shooting ranges, and picnic areas; and

6. Partitioning the subject property with fences.

The City has received revenues from the activities it has permitted upon the subject real property and has defrayed all costs and expense of maintaining the area. None of the moneys so received from the subject property have been turned over to either the Choctaw-Chickasaw Tribes or to the Department of the Interior.

The City of McAlester's use and permitted use of said subject tract evolves from its easement rights purportedly acquired from the condemnation action culminating in a judgment entered on January 31, 1903. The parties agree, and the Court so finds, that the United States was an indispensable party to the condemnation proceedings had in 1903; and, if the United States was not a party to those condemnation proceedings by which the City claims its right under easement, then the United States is not prevented from bringing this action for a judicial declaration that the easement obtained by the City over tribal lands on January 31, 1903, is invalid.

At the request of the parties, the Court has bifurcated the issue of money damages for the defendants' alleged unauthorized use of the land, and therefore has before it at this time the remaining issues presented by plaintiff's Complaint.

■ The United States contends that it was not made a party to the 1903 proceedings, that it was an indispensable party to said proceedings, and therefore seeks a judicial declaration that the easement obtained by the City over the tribal lands is invalid, and by reason of such invalidity prays that the Court quiet title in the lands described in the Complaint.

The City acknowledges the fee simple estate of subject lands to be vested in the Choctaw and Chickasaw Nations, but contends, and by pre-trial order it is admitted, that the fee simple estate of the Choctaw and Chickasaw Nations is subservient to the imposed easement of the City of McAlester. (Pretrial Order 3[h]). The City does not concede that the United States was not a party to the 1903 proceeding and contends that the burden of proof rests with the United States to prove that it was not a party to the 1903 condemnation action. It further contends that the present action constitutes a collateral attack upon that judgment and the burden is therefore upon the plaintiff to overcome the presumption that the Court rendering the 1903 judgment had jurisdiction of the subject matter, had the necessary parties before it and that all the necessary facts to give jurisdictional power to render the judgment existed and were duly proven and found. City further contends that the mere receipt of a judgment itself, or certified copy thereof, is not sufficient to overcome the presumption. In support of its position, City cites *Choctaw & Chickasaw Nations v. City of Atoka,* 207 F.2d 763 (10th Cir. 1953). In *City of Atoka,* a condemnation action, the process papers were destroyed by fire. The remaining records of the proceedings did not indicate whether or not the United States was a party to the action. The Court stated,

"The record did not show that the United States was not a party *and the judgment recited that all of the claimants to the land sought to be condemned had been notified of the proceedings as required by law.*" *City of Atoka* at 765. (Emphasis added).

That action, the court observed, was a collateral attack upon the judgment in the condemnation proceedings. The court found that as

"[a]gainst a collateral attack on a judgment rendered by a court of competent jurisdiction, it will be presumed that the court had jurisdiction of the subject matter and of the parties,

(citations omitted) and that all facts necessary to give the court jurisdiction or power to render the judgment existed and were duly proven and found, (citations omitted) unless the fact of want of jurisdiction and the consequent invalidity of the judgment affirmatively appears on the face of the judgment or of the record, or is otherwise properly established by proof." *City of Atoka* at 766.

This Court adheres to that rule and recognizes that the burden is upon the party collaterally attacking a judgment to overcome the presumptions and establish the invalidity of a judgment by competent and convincing proof. In *City of Atoka,* supra, the court noted that in the absence of any showing in the record either one way or the other, a presumption arises in favor of the validity of the judgment.

It is clear that, in *City of Atoka,* supra, the court based its findings on the fact that there was an absence of any showing whether the United States was made a party to that proceeding and noted that the record did not show the United States was not a party. It should be remembered, however, that the judgment therein recited that all of the claimants to the lands sought to be condemned had been notified of the proceedings as required by law.

In the present case, the Government's Exhibit No. 1 affirmatively shows that the parties defendant in the 1903 action were "Choctaw and Chickasaw Nations of Tribes of Indians" and further recites that the judgment was entered on stipulation signed only by the attorney for the City of South McAlester and attorneys for the Choctaw and Chickasaw Nations. Judgments recite parties to the action, not parties who are not brought into the suit. Contrary to the situation in *City of Atoka,* there is nothing within Exhibit No. 1 which indicates that all the claimants to the land sought to be condemned had been notified of the proceedings as required by law. To the contrary, Government's Exhibit No. 1 affirmatively shows that only the Choctaw and Chickasaw Nations of Tribes of Indians had been made parties defendant and were the parties that entered into the stipulation which is the foundation of the judgment so entered.

The Government has also offered an affidavit of one Mark G. Eckhoff, (Government's Exhibit No. 2), who states that he is Chief of the Legislative, Judicial and Fiscal Branch, Civil Archives Division, National Archives and Records Service, Washington, D. C., and fully familiar with the procedures and techniques necessary to determine the existence or non-existence of judicial records involving the United States of America. The affiant states that on November 11, 1975, Mr. William H. Burchette, Trial Attorney, Land and Natural Resources Division, Department of Justice, requested the affiant to conduct an examination of the National Archives and Records Service to determine whether there was any reference to the case entitled *City of South McAlester vs. Choctaw and Chickasaw Nations of Tribes of Indians,* Number 3293, United States Court in Indian Territory, Central District. Affiant states that he has caused a diligent search to be made by his staff of the records of the Department of Justice in the National Archives concerning the period 1902 and 1903 and that no correspondence has been found with respect to the above case. Affiant further states that no reference whatsoever to this case has been found among the records of the Department of Justice in the National Archives.

Plaintiff objects to the admissibility of Government's Exhibit No. 2 contending that Mr. Eckhoff is not a proper person to execute such affidavit and therefore the court must exclude Government's Exhibit No. 2 from evidentiary consideration. Rule 902(4) of the Federal Rules of Evidence authorizes certifications by custodians by a certificate complying with paragraph (1), (2), or (3) of this Rule. By affidavit, Mr. Eckhoff establishes that he is an officer

854

of the National Archives and Records Service, being Chief of the Legislative, Judicial and Fiscal Branch of the Archives Division of said National Archives and Records Service and is fully familiar with the procedures and techniques necessary to determine the existence or non-existence of judicial records involving the United States of America. Government's Exhibit No. 2 is therefore a document purporting to bear the signature of an officer or employee in an official capacity as authorized by Rule 902(1)(2)(4) of the Federal Rules of Evidence. In addition, Government's Exhibit No. 2 is admissible as provided by Rule 803(10) of said Rules. No suggestion is made by defendant that the information contained within said affidavit is untrustworthy. For the reasons stated the Court overrules defendant's objections to Government's Exhibit No. 2 and considers same as evidence of record in this case. Government's Exhibit No. 2, standing alone, establishes that for the period 1902 and 1903 no correspondence has been found with respect to the subject condemnation proceedings and further no reference whatever has been found among the records of the Department of Justice in the National Archives to said proceedings.

It is the finding of the Court that the burden placed upon the United States, being a party collaterally attacking a judgment, has been met and that the evidence establishes that the United States was not a party to the condemnation proceedings had by the City in 1903. However, the Court does not therefore hold that the easement obtained by the City over the said tribal lands on January 31, 1903, is invalid.

To determine whether the City holds a valid easement, the Court must determine whether the City lawfully exercised its rights of eminent domain in 1903. Section 3 of the Act of March 3, 1901, (now codified as 25 U.S.C. § 357), authorizes the condemnation of land for any public purpose under the laws of the state or territory where located. The money awarded as damages shall be paid to the allottee. The Congress, by enacting this section, permitted the taking of Indian lands by eminent domain. The 1903 judgment clearly establishes that payment of just compensation for the taking was made to the allottees. No claim is made by the Government that the City did not have the right to acquire the easement, nor is there a claim that the "allottees" failed to receive just compensation for the easement so taken. The Government simply claims that since it was not a party to the 1903 action, the easement is void.

Since the Government does not now question the right of City to obtain the easement, the question arises as to what purpose would have been served if it had been a party to the 1903 suit. The Government could not and would not have questioned the right of the City to acquire the easement in the 1903 proceeding and can have no greater right in this proceeding when it is admittedly within the City's right to acquire for an appropriate public purpose. The right to acquire the easement is not a proper subject for litigation. Whether the taking is to the best interest of the allottees is immaterial. *Nicodemus v. Washington Water Power Co.*, 264 F.2d 614 (9th Cir. 1959).

Where no valid issue of a taking for a public purpose is raised, the only remaining issue is that of just compensation and who is entitled to receive the compensation.

Having held that the Government was an indispensable party and that it was not a party to the 1903 proceeding, we must now determine what rights the City did acquire, if any, in those proceedings and by its acts of taking possession of the easement.

The City did institute eminent domain proceedings for the public good as an exercise of its right as a sovereignty. "The appropriation of private property for a public use is generally viewed as a proceeding in rem. The power of eminent domain when exercised acts on the land itself, not on the title or the

sum of the titles if there are diversified interests." 26 Am.Jur.2d Eminent Domain § 130, pp. 788 & 789 (1966). The state acquires original title. All previous ownership not only by privies but also by strangers is concluded.

"Thereafter, whoever may have been the owner, or whatever may have been the quality of his estate, he is entitled to full compensation according to his interest and the extent of the taking, but the paramount right is in the public, not as claiming under him by a statutory grant, but by an independent title."

26 Am.Jur.2d Eminent Domain, § 130, p. 789 (1966). See *United States v. 19.86 Acres of Land*, 141 F.2d 344, 151 A.L.R. 1423 (7th Cir. 1944). The easement vested as an independent title imposed on the subject land at the time of the taking in 1903, and the fact that the Government was or was not a party to those proceedings does not affect the City's easement rights. What the Government could question as fiduciary trustee of the lands, but does not, is whether just compensation was paid by City for the easement acquired. As trustee, it has an interest to see that the beneficiaries receive just and fair compensation for the taking of the properties. However, the Government does not challenge the fairness of the compensation paid. There can be no doubt that the City acquired its easement in the subject lands no later than the date it took possession of the easement for easement purposes and paid compensation to the owners. This is true even if the condemnation proceedings were defective by failing to name the United States as a party as required by law. In *United States v. Dow*, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958), the Court had before it a situation where the United States took possession of a strip of land in March, 1943, and immediately began laying pipe through the tracts so possessed. The line was completed in 1943 and had been continuously used. In May, 1946, the Government filed a declaration of taking, under the Declaration

of Taking Act, covering the pipeline strip. The pertinent issue was when the taking had occurred. The Court said:

"We hold contrary to the Court of Appeals that the 'taking' did not occur in 1946 when the Government filed its declaration of taking, but rather when the United States entered into possession of the lands in 1943."

The court explained that

". . . the United States may take property pursuant to its power of eminent domain in one of two ways: it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such taking."

*Dow* at 21, 78 S.Ct. at 1044, 2 L.Ed.2d at 1114. But when does title pass? In *Dow*, the court stated,

"[A]lthough in both classes of 'taking' cases—condemnation and physical seizure—title to the property passes to the Government only when the owner receives compensation, see *Albert Hanson Lumber Co. v. United States*, 261 U.S. 581, 587, [43 S.Ct. 442, 444, 67 L.Ed. 809], or when the compensation is deposited into court pursuant to the Taking Act, . . . . the passage of title does not necessarily determine the date of 'taking'." *Dow* at 21, 22, 78 S.Ct. at 1044, 2 L.Ed.2d at 1114. See *Stringer v. United States*, 471 F.2d 381 (5th Cir. 1973); *United States v. Herrero*, 416 F.2d 945 (9th Cir. 1969); *Fibreboard Paper Products Corp. v. United States*, 355 F.2d 752 (9th Cir. 1966).

In the case at bar, the City did institute eminent domain proceedings. That has been clearly proved, and judgment was entered defining the easement so taken. Also the City paid the owners, the Choctaw-Chickasaw Nations, the award of just compensation for the easement so taken. (Government's Exhibit No. 1). The City took possession of the easement in 1903 and has been in exclusive control and continuous physical possession there-

of since that date. The easement passed to the City in 1903 and will remain so "to have and to hold and possess said easement so long as the same shall be used for the purposes herein before set out." (Government's Exhibit No. 1). It is therefore the finding of the Court that the easement herein questioned was obtained by City in 1903 and is valid.

The Government also requests an injunction to prevent the City from issuing permits, leases, licenses and otherwise using tribal lands without authority. The gravamen of this complaint is that the City of McAlester has by 1) leasing to individuals for the purpose of growing, cultivating, gathering, baling and any related efforts designed toward obtaining and selling hay; 2) permitting and encouraging persons to occupy residences upon the watershed which residences were placed there by the City of McAlester; 3) leasing parcels of subject property to utility companies for the purpose of building antennas; 4) issuing hunting, fishing and grazing permits upon and over the subject property; 5) erecting archery shooting ranges, police shooting ranges and picnic areas; and 6) partitioning the subject property with fences; exceeded the authority granted to it in the estate taken by easement in the 1903 condemnation proceedings.

 The plaintiff claims that the uses outlined above are inconsistent with the easement ". . . for the purpose of a watershed and basin and erecting, maintaining and using a waterworks system . . . ." The law which must be applied in determining the authorized use of an estate taken by condemnation in the "absence of any governing administrative ruling, statute, or dominating consideration of Congressional policy to the contrary . . ." is governed by the State of Oklahoma. *United States v. Okla. Gas & Electric Co.,* 318 U.S. 206, 210, 63 S.Ct. 534, 536, 87 L.Ed. 716, 720 (1943). However, no specific guidelines are available under the statutory or case law of Oklahoma. In their Trial Briefs plaintiff and defendants have quoted from pertinent sections of Corpus Juris

Secundum in regard to uses of lands held as easements.

"Where an easement exists by express grant, its use must be confined to the terms and purposes of the grant, but may of course be used in accordance therewith; but the owner of the dominant tenement cannot increase the servitude imposed on the servient tenement, and he can use it only in a reasonable manner and so as not unnecessarily to injure the rights of the other party, especially where the grant expressly so provides. If the grant is in general terms, it is limited to a use which is as reasonable and as little burdensome to the servient estate as the nature of the easement and its object will permit."

28 C.J.S. Easements § 87a, pp. 765, 766 (1941)

The party having an easement in another's land has a duty to use such land in a manner which will not injure the remaining estate.

"Ordinarily the owner of land and water taken for a water supply or for impounding waters retains the right to make any use of the water or the land which does not interfere with such purpose; however, it has been held that such a taking excludes the land owner from the use and occupation of his land, even though a fee may not have been taken, and that, where land is condemned for a reservoir, or to protect a water supply from pollution, or for a pumping station, the condemnor is entitled to exclusive possession."

30 C.J.S. Eminent Domain § 451c, p. 651 (1965)

The condemnor may change the use of the property as long as such use is not inconsistent with the purpose for which the land was condemned. See 3 Nichols on Eminent Domain, § 9.22, p. 283 (Revised 3rd Ed. 1975).

 To obtain the benefit of the easement the City must control the use of the surface impressed for the proper enjoyment of the rights conferred by the

easement. The Court must look at the specific alleged wrongful uses to determine whether each is inconsistent with the easement held by the City of McAlester "for the purpose of a watershed and basin and erecting, maintaining and using a waterworks system."

In particular the plaintiff alleges that on May 11, 1970, the defendant, City of McAlester, entered into a lease agreement with defendant J. T. Hall, a/k/a Joe Turner Hall, granting a hay permit for a period of one year to defendant Hall upon the described real property, and that said lease agreement recites consideration for the contract in the sum of $1,001.00. Plaintiff further alleges that the Choctaw and Chickasaw Nations gave no permission nor consent to the defendants for the lease to J. T. Hall nor did the Choctaw and Chickasaw Nations receive any part of the compensation paid.

The defendants, City of McAlester and J. T. Hall argue that this lease between said defendants is designed to control the growth of grass and small brush and to prevent fire hazards in the form of dry weeds and brush. As a means of offsetting the expense of properly controlling the growth of undesirable vegetation, the City has leased part of the subject lands for the hay which may be harvested. The plaintiff argues that this is an unauthorized use of the lands. It is the finding and conclusion of the Court that the leasing of easement lands held by the City for the purpose of controlling the growth of grasses, weeds and brush is a proper and authorized use of the subject lands held by easement from the Choctaw and Chickasaw Nations and that such use is not inconsistent nor contrary to the maintenance of a watershed. A watershed by its very nature is designed to allow the captured water to flow into a gathering pool. Excessive vegetation would most certainly interfere with the flow of draining water. For the City to neglect the land and allow undesirable growth to accumulate would harm not only the use of the land as a watershed easement but also injure the remaining estate by subjecting the land to potential fire damage or unusable thicket. Therefore the request for an injunction to prevent the leasing of lands for purposes of gathering hay is denied. The request for an injunction to prevent the defendant J. T. Hall from leasing the subject lands for purposes of gathering hay is denied. The request for damages is denied.

The plaintiff also seeks to enjoin the City from granting hay permits to and entering into leases with defendants Earnest Berry, Phillip Orlandees, Joe Whitefield and Don Ketcham with respect to the subject lands. For the reasons stated in the preceding paragraph the relief sought by the plaintiff against the City and defendants Berry, Orlandees, Whitefield and Ketcham is denied.

Plaintiff asserts that the agreements between the City and defendants Charley Chiusana and Jim Burrows whereby these defendants occupy homes on the subject property are beyond the authority of the City under the easement and that such occupation by Chiusana and Burrows is an improper use of the easement. The Nations have not given permission nor have they received compensation for the agreements which allow these defendants to occupy the lands as a residence.

The defendant City contends that the agreements whereby Chiusana and Burrows occupy a homesite on the easement lands were entered into for the protection and maintenance of the subject lands. The City owns the homes and constructed them for the purpose of providing quarters for the watershed officers which are close to the lands. No allegation is made by plaintiff that these houses have injured the lands. The contention of the plaintiff is that the City is unauthorized by the terms of the lease to use the lands in this manner. It is the finding and conclusion of the Court that occupation by watershed officers for the protection of the lands is consistent with the purpose for which the ease-

ment was granted. Not only the City but also the Nations benefit from the vigilance of these officers who protect the equipment of the City as well as guard against permanent damage to the lands in the form of fires, theft of natural resources and erosion. Such protection is wise husbandry. The request for injunctive relief preventing such use is denied. The request for damages is denied.

The plaintiff objects to the use of the lands by the public for hunting and fishing. The plaintiff objects to the archery and police firing ranges and public picnic areas which have been constructed on the lands. Plaintiff does not contend that such activities constitute injury to the lands but asserts that these uses are unauthorized by the terms of the easement.

■ It is the finding and conclusion of the Court that the uses of the easement lands for fishing, hunting, picnic areas, archery and police firing ranges are not inconsistent with the maintenance of the watershed and that such uses do not interfere with the primary purpose of the easement. Recreational use of the lands by the public is incidental to the primary purpose of the land as a water supply. Abundant fish and game animals are a natural consequence of conservation. Control of fish and wildlife is properly effected by hunting and fishing permits. Public picnic areas provide recreation for the public good. Archery ranges contribute to the public welfare in the form of recreation and do not interfere with the easement or fee title interests held in the land. Police firing ranges contribute to the public welfare in aiding the proficiency of the police department. Such uses do not harm the land or the easement as a watershed and basin. The request for injunctive relief and damages against the defendant users for the purposes of hunting, fishing, archery, picnicing and a police firing range is denied.

The plaintiff objects to the construction of fences on the subject lands. Plaintiff contends that the construction of fences is a use inconsistent with the rights granted under the easement.

■ It is the finding and conclusion of the Court that the construction of fences is not an improper use of the subject lands when such fences do not interfere with the flow of the water and where such fences do not otherwise thwart the purposes of the easement as a watershed and basin.

It is not only possible but quite probable that roving animals may cause damage to the equipment used in supplying water to the City, pollute the reservoir or otherwise damage the watershed or reservoir. In such a situation failure to construct fences would threaten the usefulness of the easement and very possibly constitute an actionable neglect by the City. Fences may be necessary to maintain the peace and prevent vandalism. Fences may be necessary to prevent the public from entering restricted areas and to confine the public to authorized areas.

Plaintiff has failed to show how the fences constructed by the defendant have interfered with the watershed and basin objectives. Plaintiff merely alleged that the fences are an unauthorized use. Standing alone the construction of fences is not an improper use. Plaintiff's request for an injunction preventing the construction of fences is denied.

■ Plaintiff next asserts that the grant by the City of a pasture lease for a period from 1971 through 1974 to defendant Bill Lyons and the grant of a pasture lease for a period from 1972 through 1975 upon a portion of the subject property were unauthorized uses of the easement held by the City. Plaintiff has not argued that such pasture leases have injured the land to the detriment of the fee held by the Nations. Plaintiff argues that a pasture lease is inconsistent with the use of the lands as a watershed and basin. Here again, the issue is whether proper grazing of the subject lands interferes with the use of the ease-

ment as a watershed or inflicts injury upon the remaining estate.

In the Trial Brief of the defendant City of McAlester filed on November 7, 1975, the City makes the following statement:

"Evidence will further be presented on behalf of the City of McAlester that protection of the water supply requires that animals be excluded from the watershed and that it is not a proper use of the watershed to permit livestock to be pastured thereon." (Brief page 5).

While the City may find itself in a position where it is improvident to allow animals to graze on the lands, the use of the lands for grazing does not in itself constitute an improper use and interfere with the lands as a watershed. Whether the excess grasses are gathered and stored as hay or removed directly by grazing animals, the result is the control of vegetation. The City may determine that certain areas interfere with proper maintenance of a safe water supply. It is not within the providence of this Court to manage the easement lands. The Court finds that pasture leases in themselves may be a reasonable and efficacious method of preserving the watershed. Therefore, the relief sought by the plaintiff in preventing the City from granting pasture leases is denied.

The plaintiff objects to the lease of the easement lands for the purposes of constructing antennas. Plaintiff contends that such use is inconsistent with the use of the lands as a watershed.

Defendant City admits that part of the subject lands has been used to install transmission towers for the telephone company and for the cable TV company. Defendant City contends that such use is not inconsistent with the purposes of the easement.

█ The purpose of the easement granted to the City was to provide a source of water for the public in particular the citizens of McAlester, Oklahoma. Hay leases are in furtherance of such an objective. Hunting and fishing permits are for public enjoyment. Picnic areas and archery ranges are recreational facilities designed for public benefit and enjoyment. Police firing ranges directly benefit the public in the form of protection for the citizens and the lands. Homes for watershed officers directly benefit the public in protecting the lands for watershed and water resource purposes and provide protection for the fee estate held by the Nations. All of these uses are for the benefit of the public in one way or another in that they 1) maintain the watershed and basin lands, 2) provide recreational facilities for the general public, or 3) protect the public and the lands from injury. Revenue received from such uses defrays the costs of proper maintenance. Leases for the construction of telephone and television antennas present a use characterized by a private interest for the purpose of private gain. Antennas are not useful in controlling brush and grasses which inhibit the flow of water. Antennas do not provide protection for the property. While the public receives services through these private telephone and television interests so does the public receive a service from a myriad of other businesses for which the individual must pay.

It is clear that the use of the easement lands for telephone and television antennas does not easily fit into any of the categories stated herein. However, the three categories listed above are not exclusive and do not preclude other authorized uses of the easement lands. The Court must consider other factors in determining whether the construction of antennas is an improper use. The case of *United States v. Okla. Gas & Elect. Co.*, 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716 (1943) provides some guidance. The question presented in *Okla. Gas & Elect. Co.* was

"whether permission to the State of Oklahoma to establish a highway over allotted Indian land given under § 4 of the Act of March 3, 1901, (31 Stat. 1058, 1084, 25 U.S.C. § 311) includes the right to permit maintenance of rural electric service lines within the highway bounds." *Okla. Gas & Elect. Co.* at 207, 63 S.Ct. at 535, 87 L.Ed. at 718.

In construing Title 25 U.S.C. § 311 the Supreme Court addressed the question of incidental uses by private interests of Indian lands granted to the State for the primary purpose of constructing a highway.

"In construing this statute as to the incidents of a highway grant we must bear in mind that the Act contemplated a conveyance to a public body, not to a private interest. There was not the reason to withhold continuing control over the uses of the strip that might be withheld wisely in a grant of indefinite duration to a private grantee. It is said that the use here permitted by the State is private and commercial, and so it is. But a license to use the highway by a carrier of passengers for hire, or by a motor freight line, would also be a private and commercial use in the same sense. And it has long been both customary and lawful to stimulate private self-interest and utilize the profit motive to get needful services performed for the public. The State appears to be doing no more than that.

"This is not such a transmission line as might endanger highway travel or abutting owners with no compensating advantage. It is a rural service line, and to bring electric energy in to the countryside is quite as essential to modern life as many other uses of the highway. The State has granted nothing not revocable at will, has alienated nothing obtained under the Act, has permitted no use that would obstruct or interfere with the use for which the highway was established, and has not purported to confer any right not subsidiary to its own or which would survive abandonment of the highway." *Okla. Gas & Elect. Co.* at 211, 63 S.Ct. at 536, 87 L.Ed. at 720.

▮ Telephone service, while private and commercial, is a needful service performed for the public. While the construction of grants is a federal and not a state question, a state rule of construction may be considered where the grantor's intention is not otherwise shown.

See *Choctaw & Chickasaw Nations v. Board of County Com'rs,* 361 F.2d 932, 933 (10th Cir. 1966). The State of Oklahoma has provided for a right-of-way over lands and real property in favor of telegraph and telephone companies by enacting Title 18 Okla.Stat. § 601. Such right-of-ways are subject to the control of municipal authorities.

By enacting § 601 it is clear that the State of Oklahoma considers telephone transmission cables as providing a service for the public good.

In applying the language that "it has long been both customary and lawful to stimulate private self-interest and utilize the profit motive to get needful services performed for the public", the Court must determine whether telephone or cable television is a needful service. The State of Oklahoma has obviously found that the telephone is a needful service. Accessibility and availability of communications services are essential to the economic and social welfare of a modern society. Both the general public and the individual benefit from the use of a telephone antenna. In granting leases for a telephone antenna, the City has permitted no use that would obstruct or interfere with the use for which the watershed easement was established nor would such use survive abandonment of the easement. A cable television antenna aids in the communication of ideas and supports the public welfare by providing a recreational service. Recreational benefits in favor of the public may be implemented in various ways and include the creation of picnic areas, hunting and fishing areas or the construction of a cable television antenna.

It is the finding and conclusion of the Court that the leases for the construction of telephone and cable television antennas are not inconsistent with the use of the easement lands as a watershed and basin and that such construction does not injure the fee title interest held by the Nations. Therefore the injunctive relief requested by the plaintiff is denied.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that the Choctaw and Chickasaw Nations are the owners of the fee simple title in and to the lands described in the Complaint, subject only to the easement held by the City of McAlester, Oklahoma, for the purpose of a watershed and basin, and erecting, maintaining and using a waterworks system for so long as the easement is used for such purpose.

IT IS FURTHER ORDERED ADJUDGED AND DECREED that the lands described in the Complaint are subject to the easement held by the City of McAlester, Oklahoma, for the purpose of a watershed and basin, and erecting, maintaining and using a waterworks system for so long as the easement is used for such purpose and that said easement is valid.

IT IS FURTHER ORDERED ADJUDGED AND DECREED that leasing to individuals for the purpose of growing, cultivating, gathering, baling and any related efforts designed toward obtaining and selling hay, permitting the occupation of residences by conservation officers upon the subject lands, leasing parcels of the subject property to utility companies for the purpose of building antennas, issuing fishing, hunting and grazing permits upon and over the subject property, erecting archery shooting ranges, police firing ranges and picnic areas upon and over the subject property and partitioning the subject property with fences are not in themselves uses which are inconsistent with the primary purpose of the easement as a watershed and basin.

IT IS FURTHER ORDERED ADJUDGED AND DECREED that the plaintiff's request for injunctive relief and damages against all of the defendants is denied.